## 72901. THE STATE v. TOSAR.
(350 SE2d 811)

POPE, Judge.

On November 27, 1985 at approximately 1:30 a.m. Officer Dorrough of the Clayton County Police Department observed a vehicle driven by appellee Orlando Tosar to be weaving on State Highway 85

in Clayton County. After the traffic pullover, Officer Dorrough observed several signs of appellee's intoxication and asked him to perform several field sobriety tests. When appellee failed these tests, the officer arrested him for driving under the influence of alcohol and read him his implied consent rights pursuant to OCGA §§ 40-5-55 and 40-6-392. Appellee submitted to a breath test by intoximeter which resulted in a blood alcohol reading of .12 percent. Appellee requested no additional test under OCGA § 40-6-392 (a).

After hearing evidence on appellee's motion to suppress the results of the intoximeter test, the trial court found that appellee understood very little, if any, English and that he did not actually understand the implied consent rights which Officer Dorrough had read to him. Further, Dorrough had made no effort to procure a Spanish-speaking person to interpret the reading of appellee's implied consent rights. By supplemental findings of fact, the trial court also found that appellee had been issued a driver's license by the Georgia Department of Public Safety after he was permitted to have a Spanish-speaking person interpret and translate. The trial court further stated that evidence had been introduced which indicated that the Georgia Department of Public Safety offers driver's license examinations in Spanish.

Concluding that appellee spoke only Spanish, the trial court found that the State had failed to meet its burden of informing appellee of his implied consent rights. Appellee, therefore, could not knowingly waive his right to an additional test under OCGA § 40-6-392 (a). Based upon the foregoing, appellee's motion to suppress the results of the intoximeter test was granted. The State appeals.

"The State of Georgia considers that the persons who are under the influence of alcohol or drugs while operating a motor vehicle or who have a blood alcohol content of 0.12 percent or greater while operating a motor vehicle constitute a direct and immediate threat to the welfare and safety of the general public. Therefore, any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his blood, breath, or urine or other bodily substances, for the purpose of determining the alcoholic or drug content of his blood if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391." OCGA § 40-5-55 (a). Under OCGA § 40-6-392 (a) (3), the suspect who has been tested "may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer." "The arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this

Code section." OCGA § 40-6-392 (a) (4). The *failure* to so advise the suspect of his right to an additional test invalidates the result of any test so given and precludes its admissibility in evidence. *Garrett v. Dept. of Public Safety*, 237 Ga. 413 (2) (288 SE2d 812) (1976); *Nelson v. State*, 135 Ga. App. 212 (217 SE2d 450) (1975).

However, there are statutorily excepted situations in which the failure to advise the suspect of his right to an independent chemical test does not make the results of the state-administered test inadmissible. Pursuant to OCGA § 40-5-55 (b) "[a]ny person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the [implied consent to a chemical test to determine the alcohol or drug content of his blood] and the test or tests may be administered, subject to Code Section 40-6-392." Thus, the General Assembly recognized that there could be instances in which the suspect driver might be incapable of comprehending his rights when read to him. Obviously appellee was not dead or unconscious when he submitted to the intoximeter test. The State argues, however, that because of his inability to understand the officer who spoke only English, appellee falls into the category of "otherwise incapable of refusal." This contention has merit where the statute is read to mean that the inability to understand the rights read in English rendered the non-English speaking appellee's condition "the same as unconscious, i.e., in a noncommunicative condition." *Smith v. State*, 143 Ga. App. 347, 348 (238 SE2d 698) (1977) (suspect was semi-conscious and not communicating). See also *Rogers v. State*, 163 Ga. App. 641 (1) (295 SE2d 140) (1982). There is nothing in the record to show if appellee ever communicated to Officer Dorrough that he could not speak English. However, from the standpoint of Officer Dorrough who *unquestionably read* appellee's implied consent rights to him, appellee's inability to understand him rendered him noncommunicative.

In any event, without basing our holding today upon OCGA § 40-5-55 (b), we reverse the trial court's order which suppressed the test results because the State failed to inform appellee of his implied consent rights. The State did prove that Officer Dorrough read appellee his rights. The State is under no duty to show appellee's affirmative waiver of an additional chemical test. See *Cunningham v. State*, 255 Ga. 35 (6) (334 SE2d 656) (1985); *State v. Dull*, 176 Ga. App. 152 (335 SE2d 605) (1985). "As we read this statute a duty is placed upon an officer who administers or causes to be administered a chemical test for alcoholic content in bodily fluids to advise the testee that he is entitled to an independent test of his own choosing. Once that duty is fulfilled by the officer, the statutory obligation is satisfied. Sworn testimony by the officer that such advice was given constitutes a prima facie showing of compliance." *Snelling v. State*, 176 Ga. App. 192, 193

(335 SE2d 475) (1985).

Appellee's inability to communicate with the officer brings this case within the meaning of OCGA § 40-6-392 (a) (3): "The justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." Where the law enforcement officer cannot communicate with the suspect because the suspect cannot speak English, any failure to obtain an additional test is justifiable and the results of the state-administered tests are admissible. This is so because of the exigent circumstances surrounding the chemical test for the alcohol or drug content in the blood of one suspected of driving under the influence. "It is a well known and accepted fact that following the ingestion of alcohol into the human body, the alcohol is assimilated into the bloodstream, reaching its cumulative peak concentration shortly after ingestion of the latest drink, and thence, without further ingestion, commences to dissipate from the blood at a constant and fairly rapid rate. The police investigator is often faced with the problem of preserving evidence of a crime which he believes upon reasonable grounds to have been committed. The investigator in this case was faced with evidence [that the suspect had been driving while under the influence of alcohol.] Time was passing and the blood-alcohol level, by natural law, was changing. The suspect was . . . unable to communicate with the officer." *Smith v. State*, supra at 349. The officer did read appellee his implied consent rights in English, and appellee submitted to the intoximeter test. Even though appellee did not understand that he had a right to an additional chemical test because he does not speak English, "we do not believe that invalidated the procedure or rendered the results of the test inadmissible." Id.

Through our holding we decline appellee's suggestion that we compel the State to print the implied consent rights in Spanish, or in as many different languages as the Georgia driver's license examination is given. To do so, we believe, would unreasonably burden law enforcement officers who would then be required to determine if the non-English speaking person spoke one of the languages of the pre-selected printed forms as well as determining if that person could also read his spoken language. This we will not do. The trial court's order suppressing the results of the intoximeter test is reversed.

*Judgment reversed. McMurray, P. J., and Carley, J., concur.*

DECIDED NOVEMBER 5, 1986 —
REHEARING DENIED NOVEMBER 19, 1986

*John C. Carbo, Solicitor, Anne Landrum, Assistant Solicitor,* for appellant.

*Fredy M. Alvarez*, for appellee.