A94A0369. THE STATE v. WEBB.
(443 SE2d 630)

BIRDSONG, Presiding Judge.

The State of Georgia appeals the trial court's suppression of a test showing .30 percent blood-alcohol content in Curtis Stacey Webb following his arrest for driving while under the influence.

Webb was stopped at a roadblock about 2:00 a.m. The officer who stopped him was immediately made aware that Webb is hearing and speech impaired. The arresting officer communicated his implied consent rights to Webb through Webb's friend, Kendall, who had been in the car behind Webb's car when Webb was stopped. Kendall used sign language to convey the officer's statements and requests to Webb, and Webb indicated that he understood. The officer showed Webb a form with the implied consent laws printed on it and indicated each line with his finger so that Webb could read it. The interpreter initialed the card where Webb signed it. It was not contended at the hearing on motion to suppress that the interpreter was incompetent or did not adequately convey the officer's statements and requests. There was evidence from Webb's mother that Webb could not have fully understood the language of the statement even by sign language unless the words were simplified for him. The trial court found as stipulated that "if the [arresting] officers had called the Georgia Registry of Interpreters [see OCGA § 24-9-101 (4)] between the hours

of 5:00 p.m. and 8:00 a.m., when this arrest occurred, they would have reached an answering machine."

The trial court found that "if the steps required in OCGA § 24-9-103 had been followed, and defendant did not understand the warnings after a qualified interpreter had translated them . . . or if the defendant had not understood the warnings after reading them more than one hour from the time that an interpreter was requested [see OCGA § 24-9-103 (b)], then the warnings and the results of the Intoximeter would have been admissible [and] . . . *State v. Tosar*, [180 Ga. App. 885 (350 SE2d 811)] . . . might have applied." But as the officer did not wait one hour before determining that a "qualified interpreter" (see OCGA § 24-9-101 (6)) was not available, the trial court held that the implied consent warning was given in violation of § 24-9-103 and that the blood tests were inadmissible. *Held*:

The trial court erred in suppressing this evidence.

OCGA § 24-9-103 (b) (1), provides: "No interrogation, warning, informing of rights, taking of statements, or other investigatory procedures shall be undertaken until a qualified interpreter has been provided; and no . . . evidence acquired from the hearing impaired person shall be admissible in any criminal . . . proceeding unless such was knowingly and voluntarily given through and in the presence of a qualified interpreter." "Qualified interpreter" is defined at OCGA § 24-9-101 (6).

The implied consent laws differ from others giving certain rights in that every driver's consent to a chemical test for intoxication is implied by law. The legislature has declared as a matter of law that persons having an excess of .10 percent grams blood-alcohol concentration "*constitute a direct and immediate threat to the welfare and safety of the general public.*" (Emphasis supplied.) OCGA § 40-5-55 (a). "Therefore, *any person* who operates a motor vehicle . . . throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392 [as to advisement of driver of his right to an additional test], to a chemical test or tests. . . . *The test or tests shall be administered as soon as possible* to *any person* who operates a motor vehicle upon the highways." (Emphasis supplied.) Id.

Under the implied consent laws, every driver is deemed to have given his consent to a chemical test for alcohol content, subject only to the duty "placed upon an officer . . . to advise the testee that he is entitled to an independent test of his own choosing. Once that duty is fulfilled by the officer, the statutory obligation is satisfied." *Snelling v. State*, 176 Ga. App. 192, 193 (335 SE2d 475); *Tosar*, supra. In all cases the court is required to find only that the implied consent law was *conveyed* to the suspect driver. The State is under no duty to prove the suspect driver fully understood his rights under the implied consent law. *Tosar*, supra. In this respect a hearing impaired driver

does not have greater rights and privileges than a hearing driver.

Under OCGA § 40-6-392, the trial court need only find that Webb's right to an additional test was communicated to him. The legislature did not intend to contravene the laws relating to DUI by imposing impossible or impractical conditions on law enforcement agencies when arresting hearing impaired persons for driving under the influence. The provision in OCGA § 24-9-103 (b) (1), that "no . . . evidence acquired from the hearing impaired person shall be admissible in any criminal . . . proceeding unless such was knowingly and voluntarily given through and in the presence of a qualified interpreter," is not absolute, for subsection (b) (2), goes on to provide that "[i]f a qualified interpreter is not available one hour after the hearing impaired person has been taken into custody and a request has been forwarded to the [Department of Human Resources; § 24-9-101 (4)], the arresting officer may interrogate or take a statement from such person, provided that such interrogation and answers thereto shall be in writing and shall be preserved and turned over to the court in the event such person is tried for the alleged offense."

The legislature thus provided that if a qualified interpreter is not available within an hour, a hearing impaired person may be "interrogated" without a "qualified interpreter." So, although the legislature did not specify what procedure is required in the case of a hearing impaired person arrested for driving under the influence, since he is as a matter of law "a direct and immediate threat to the welfare and safety of the general public" (OCGA § 40-5-55 (a)), the laws requiring the presence of a "qualified interpreter" do not vitiate his implied consent. In *State v. Tosar*, supra at 887, we held that the General Assembly recognized in the implied consent law that there can be instances in which a driver might be incapable of comprehending his rights when read to him (see OCGA § 40-5-55 (b)); the officer in that case *"unquestionably read"* that defendant's implied rights to him (*Tosar*, supra at 887) and the defendant's inability to understand the officer did not constitute a "withdrawal" of his implied consent. That the officer *conveys* to the driver his right to an additional test is the most the law now requires before depriving the State of its right to introduce the test evidence at trial.

Webb and his amici contend the police were required under § 24-9-100 et seq. to maintain a system whereby a "qualified interpreter" could be provided at all times. The State contends that no interpreter could have been present within an hour after Webb was taken into custody and that the procedure followed was authorized under § 24-9-103 (b) (2). We need not decide such issues because the State proved that the arresting officer conveyed Webb's implied consent rights to him within the meaning of the implied consent law, to which *all* drivers are subject. "The State is under no duty to show appellee's

affirmative waiver of an additional chemical test. [Cits.]" *State v. Tosar*, supra at 887. There are many blank spaces in the hearing impaired law, but we are not authorized to abrogate the DUI laws to fill in those spaces, particularly in this case where the spirit and intent of the law giving the hearing impaired the right to have an interpreter present was satisfied.

*Judgment reversed. Cooper and Blackburn, JJ., concur.*

DECIDED MARCH 29, 1994 —
RECONSIDERATION DENIED APRIL 12, 1994 — 

*Keith C. Martin, Solicitor*, for appellant.
*Thomas W. Moody, John H. Tarpley*, for appellee.
*Michael R. Hauptman, Gerald R. Weber, Goodman & Bush, James E. Goodman, Norman L. Smith*, amici curiae.