A94A1804. THE STATE v. WOODY.
(449 SE2d 615)

RUFFIN, Judge.

The State of Georgia appeals the trial court's order suppressing results of a blood alcohol test administered to defendant Jeremy Jay Woody following his arrest for driving under the influence.

Woody was arrested after Officer Williams responded to a one-vehicle accident call. Officer Williams arrived at the scene finding Woody injured with an odor of alcohol about him. After trying to communicate with Woody, Officer Williams learned he was deaf. Officer Williams then contacted Officer Grubbs, whom he knew had a deaf child and could communicate with Woody, and requested he come to the scene. He also requested his dispatcher to contact the hospital to have someone who knew sign language meet him at the hospital. Prior to Officer Grubbs' arrival, Officer Williams communicated with Woody by writing questions on a notepad. In response to one such question, Woody wrote his mother's telephone number, as someone who could communicate with him. After the ambulance arrived, Officer Grubbs communicated briefly with Woody regarding the accident, then left the scene.

Officer Williams arrested Woody for driving under the influence after meeting him and his mother in the emergency room. After the arrest, Officer Williams told Woody's mother he would need a blood test, read her the implied consent warning in Woody's presence and requested that she communicate the warning to Woody. Although Officer Williams testified he observed Woody reading the warning, Woody's mother testified he could not have read it since he did not have his glasses on at the time. Woody's mother also testified her son

was totally deaf, her knowledge of sign language was marginal, and she was not always able to fully communicate with her son. Moreover, she testified she did not tell Woody about his rights to independent tests. Following this exchange, a blood test was administered to Woody.

In his motion to suppress, Woody contended he was not advised of his implied consent rights under OCGA § 40-6-392 because Officer Williams did not comply with OCGA §§ 24-1-5 and 24-9-101 et seq.

OCGA § 40-6-392 (a) (4) provides "[t]he arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section." In cases involving the hearing impaired, OCGA § 24-1-5 provides "[i]n the event a hearing impaired person is arrested for *any* alleged violation of a criminal law of this state, the arresting officer *shall* comply with the provisions of Article 5 of Chapter 9 of this title." (Emphasis supplied.) OCGA § 24-9-103 (a) provides "[t]he arresting law enforcement agency *shall* provide a qualified interpreter to any hearing impaired person whenever the hearing impaired person is taken into custody for allegedly violating *any* criminal law or ordinance of this state or any political subdivision thereof." (Emphasis supplied.)

Under OCGA § 24-9-103 (b) (1), the law enforcement agency is required to immediately request a qualified interpreter from the Department of Human Resources, which is required to provide the interpreter. A qualified interpreter is "any person certified as an interpreter by the National Registry of Interpreters for the Deaf or approved as an interpreter by the Georgia Registry of Interpreters for the Deaf." OCGA § 24-9-101 (6). Furthermore, "[n]o interrogation, warning, *informing of rights*, taking of statements, or other investigatory procedures shall be undertaken until a qualified interpreter has been provided; and no . . . evidence acquired from the hearing impaired person shall be admissible in any criminal or quasi-criminal proceeding unless such was knowingly and voluntarily given through and in the presence of a qualified interpreter." (Emphasis supplied.) OCGA § 24-9-103 (b) (1).

In the instant case, while the arresting officer did ask his dispatcher to request the hospital to provide an interpreter, there is no evidence the officer or his department ever requested a qualified interpreter from the Department of Human Resources once Woody was taken into custody, as required by OCGA § 24-9-103. No such request having been made, and no qualified interpreter being present, Woody was not given the implied consent warning; thus, the blood test results are not admissible in any criminal proceeding against Woody. It does not matter that the arresting officer had Woody's mother present to assist in communicating with him. Not only was she not a qualified interpreter, but the undisputed evidence shows her knowledge of sign

language was only marginal. Moreover, she testified she did not communicate to Woody his right to an independent blood test. See OCGA § 40-6-392 (a) (3) and (4).

If these procedures had been followed, and a qualified interpreter was not available within one hour after Woody was taken into custody, the arresting officer could have proceeded with his investigation and the blood test under OCGA § 24-9-103 (2). In such a case, all communication, including any questions Woody had and his acknowledgment that he understood his rights, should have been in writing so the trial court could have a record of the exchange. There is ample evidence to suggest Woody was capable of communicating in this manner; however, no such record exists.

In support of its assertion the blood test results should be admissible, the State relies solely on this court's recent decision in *State v. Webb*, 212 Ga. App. 872 (443 SE2d 630) (1994). *Webb* also involved a deaf person arrested for driving under the influence. In *Webb*, the trial court's order suppressing blood alcohol test results based on the absence of an interpreter to communicate the implied consent rights to the defendant was reversed by this court.

Although the court in *Webb* acknowledged the requirements of OCGA § 24-9-103, as well as the duty of the arresting officer to advise the defendant of the right to an independent test, it concluded "[t]hat the officer *conveys* to the driver his right to an additional test is the most the law now requires before depriving the State of its right to introduce the test evidence at trial." Id. at 874.

OCGA § 24-9-103 is clear in its application to *any* hearing impaired person taken into custody for allegedly violating *any* criminal law. Furthermore, the requirements of the statute are mandatory, and if not met, the evidence acquired is not admissible under the statute. While this court in *Webb* found the presence of a qualified interpreter is not absolute, the statute requires the law enforcement agency to at least request one. If one is not available, the statute provides a mandatory procedure under which the arresting officer can proceed with the investigation. Accordingly, we are unable to follow the decision in *Webb* to the extent it rules the blood test results are admissible even when the arresting officer failed to comply with the mandatory procedures in OCGA § 24-9-103.

In this case we find the arresting officer failed to comply with the procedure in OCGA § 24-9-103, which failure rendered the blood test results inadmissible. Accordingly, we find no error.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 23, 1994 —
RECONSIDERATION DENIED DECEMBER 5, 1994 —

*Gerald N. Blaney, Jr., Solicitor, Richard E. Thomas, Assistant Solicitor,* for appellant.

*Tomlinson, Dennison & Hasty, John E. Tomlinson, Paul M. Stark,* for appellee.