A95A1827. ALLEN v. THE STATE.
(463 SE2d 522)

BIRDSONG, Presiding Judge.

Linda D. Allen appeals her convictions for driving under the influence of alcohol, speeding and weaving on the roadway. The State-administered test showed her blood alcohol content as .14 percent. She contends the trial court erred in denying her motion to suppress, as she is hearing impaired and was not provided with an interpreter in accordance with OCGA § 24-9-103.

When police officer Gandee first spoke with appellant after stopping her, appellant informed him that she was hearing impaired, but she told him she read lips. After she completed three field tests at Gandee's request, he put her in the police car and read her the implied consent rights. Gandee testified he handed her the implied consent card from which he had read, and she read the card and wrote "that she understands" on it. The implied consent card produced by the State contains no writings. The discussions regarding implied consent occurred after she was placed under arrest and placed in the pa-

trol car. When Gandee reached the police station at about 4:45 a.m., another officer, Stubbs, noticed that Gandee was dealing with a hearing impaired person and went to help. Officer Stubbs was the arresting officer (see *State v. Webb*, 212 Ga. App. 872 (443 SE2d 630)), and he was generally familiar with the hearing impaired persons' law at OCGA § 24-9-101 et seq. Gandee and Stubbs took appellant to the intox room, and appellant gave Gandee a card which states: "U.S.A. Law for the Deaf . . . The law says you must have an interpreter if you are arrested for a felony or a misdemeanor (Breaking the law — including a traffic violation). You should not talk, write or sign any papers, except to demand a certified interpreter and a lawyer. Tell the officer or court to look up this law of 'Code of Criminal Procedure' . . . Federal Law No. 504 for the Deaf." Gandee gave appellant a Clayton County implied consent form and read it to her. At the bottom of the implied consent form, she wrote, as a note to Stubbs: "Tell him I require an interpter [sic]." Stubbs told Gandee he would try to call the Department of Human Resources and get a qualified interpreter. He located the number and called but got "a recording stating that you must call during regular business hours." He so informed Gandee.

Meanwhile, Gandee had written on the back of the implied consent form "in little layman's terms" what little parts appellant said she "didn't understand in the arrest for DUI." This exhibit shows large block letters on the back of the implied consent form: "ARREST FOR DUI, STATE LAW REQUIRES TESTS, BLOOD, BREATH, URINE, OTHER BODILY SUBSTANCE. I WANT BREATH TEST. YES OR NO. IF NO, YOUR LICENSE WILL BE SUSPENDED FOR 1 YEAR, AND REFUSAL HELD AGAINST YOU IN COURT. AND NO OTHER TESTS OF CHOICE. [Above "SUSPENDED" appear the words "(TAKEN) (LOSE) (LOST)."] IF YES, YOU HAVE RIGHT TO OTHER TESTS, BLOOD, BREATH, URINE/SUBSTANCE FROM PERSONS OF YOUR CHOICE." Appellant circled "YES." On the front of the form, appellant signed her name and initialed this language: "I [*signed: Linda Allen*] understand the above Implied Consent Right: [*initialed LDA*] I agree to take the required test(s)."

Appellant then told Gandee she wanted him to pick a test for her, but he refused. To Stubbs, on the back of the form, appellant wrote, "Is he being fair with me?" Gandee could not remember whether she wrote this before or after she signed and initialed the form. A State-administered test was taken. No additional test was made. No interpreter ever arrived.

The trial court, in an effort to construe this case under *State v. Webb*, supra, concluded that Officer Gandee could communicate with appellant and did communicate with her, and the trial court therefore

denied her motion to suppress. *Held*:

1. OCGA § 24-9-103 (b) (1) provides: "No *interrogation, warning, informing of rights, taking of statements, or other investigatory procedures* shall be undertaken until a qualified interpreter has been provided; and no . . . evidence acquired from the hearing impaired person shall be admissible in any criminal . . . proceeding unless such was knowingly and voluntarily given through and in the presence of a qualified interpreter." (Emphasis supplied.)

The trial court erred in its construction of *Webb*. In *Webb*, we concluded that all drivers are subject to the "implied consent" law; that the most the law now requires for hearing persons is that the arresting officer must *convey* to a driver his right to an additional test; and that the law does not require that the hearing driver actually understand the rights advised. We then concluded that the requirement of a "qualified" interpreter by the hearing impaired law is "not absolute" (id. at 874) so as to vitiate the hearing impaired person's "implied consent" and that hearing impaired persons are entitled to no greater privileges than hearing persons. As with hearing persons, the implied consent rights must be *conveyed* to the hearing impaired person; the only means of *conveying* those rights sanctioned by the hearing impaired law is by a sign language interpreter. The specific reason we reversed the suppression in Webb's case was that a sign language interpreter conveyed the officer's warnings to Webb, and the officer thus "conveyed Webb's implied consent rights to him *within the meaning of the implied consent law.*" (Emphasis supplied.) Id. at 874. The sign language interpreter was with Webb when he was stopped and it was not contended that the interpreter was not competent in sign language. Thus, "the spirit and intent of the law giving the hearing impaired the right to have an interpreter present was satisfied." Id. at 875.

A later case, *State v. Woody*, 215 Ga. App. 448, 450 (449 SE2d 615), inferred that *Webb* merely held that the presence of a qualified interpreter is not absolutely required as long as the officer "conveys" the information to the hearing impaired person *in some manner*. This interpretation of *Webb* is imprecise. Based on *State v. Tosar*, 180 Ga. App. 885 (350 SE2d 811) and *Snelling v. State*, 176 Ga. App. 192, 193 (335 SE2d 475), we concluded in *Webb* that the most the law now requires is that the officer *convey* to the driver his right to an additional test (id. at 873), but the sole reason we found the officer *"conveyed"* to Webb his implied consent rights was that *a sign language interpreter was present* and conveyed the officer's advice and requests to Webb "within the meaning of the implied consent law." *Webb* at 874. We specifically concluded that *"the spirit and intent of the law giving the hearing impaired the right to have an interpreter present was satisfied."* (Emphasis supplied.) Id. at 875. The result in

*Webb* is not in conflict with the result in *Woody*; there was no sign language interpreter present in *Woody* to convey the officer's warnings, and therefore, the State's test results were properly suppressed in *Woody*.

The intent of OCGA § 24-9-101 et seq. is to provide qualified interpreters to convey to hearing impaired persons their implied consent warnings and rights before any questioning or advice is given. OCGA § 24-9-103 (b) (2). But hearing impaired persons have no greater implied consent rights than hearing persons, for the law deems all drivers subject to the implied consent law. Public policy requires all persons suspected of driving under the influence of alcohol to be prosecuted and investigated to the fullest extent consistent with due process because, as a matter of law, they are "a direct and immediate threat to the welfare and safety of the general public." OCGA § 40-5-55 (a); *Webb* at 873. We concluded the same rules apply as with hearing persons: that the court is required only to find that the implied consent law was *conveyed* to the suspect driver. The spirit and intent of the hearing impaired law is that the information be conveyed through *an interpreter*. Id. at 875.

The trial court was therefore incorrect in stating that despite the "one difference" between this case and *Webb* (that in *Webb* there was an interpreter present), *Webb* controls this case. That "one difference" in *Webb* — that a person competent in sign language interpretation conveyed to Webb his implied consent rights within the meaning of the implied consent law — is the entire reason we held that the officer "conveyed" Webb's rights to him. That element being absent in this case, *Webb* requires that the State's evidence be suppressed.

2. The implied consent advice written by Gandee on the back of the implied consent form for appellant to read was inaccurate. *State v. Causey*, 215 Ga. App. 85 (449 SE2d 639). In particular, it advised appellant that if she did not "want [a] breath test," her license would be suspended for a year, and she could have "no other tests of choice." This erroneous advice was misleading and requires suppression of the State's test result.

3. Even assuming appellant understood her entitlement to an independent test via lip-reading or reading the block letters written on the back of the implied consent form, she clearly did not understand how to choose an independent test. She asked the officer to choose a test for her, and he refused. She did not waive this right by refusing to choose the test she wanted, because the officer never "conveyed" to her the means by which she could choose an independent testing facility. She was thus denied her expressly stated desire to have an independent test.

4. OCGA § 24-9-103 (b) (2) provides that if no qualified interpreter is available an hour after one is requested, an officer may "in-

terrogate" the accused.

Immediately on taking appellant to the police station, the officers did everything they could do to comply with OCGA § 24-9-103 (b) (1). They called the prescribed telephone number to get "[a] person certified as an interpreter by the National Registry of Interpreters for the Deaf or approved as an interpreter by the Georgia Registry of Interpreters for the Deaf." OCGA § 24-9-101 (6). They learned immediately that no such person was available. They were then left to their own devices in communicating with a hearing impaired person whom they had determined was "a direct and immediate threat to the welfare and safety of the general public" under the implied consent law. OCGA § 40-5-55 (a); *Webb* at 873. They did so in such reasonable means as were available to them. But, even if they had conveyed to her in writing the correct advice, under OCGA § 24-9-103 (b) (2) as presently written their efforts would not have been legal *because they did not wait an hour before "interrogating" appellant.* Officers should not be required to wait an hour for a "qualified interpreter" when they know none is available. In this waited hour, valuable evidence could be lost. The hearing impaired law thus gives hearing impaired persons a right of delay — a right sufficient in many cases to defeat the criminal prosecution — which hearing persons are not given. Although we recognize the necessity to "convey" the proper advice to the hearing impaired in a fair manner, in our view it is not reasonable to condition admissibility of DUI evidence on the presence of a "qualified interpreter" (OCGA § 24-9-103 (b) (1)) when it is a near certainty that none will be available at the times most DUIs occur. This is especially unreasonable when the information may be reasonably conveyed by other means. Nevertheless, it seems to be the law that a "qualified interpreter" must be present to convey the advice, or an hour must be awaited. The police are hamstrung by the absurdities in this law. The license and impunity it ultimately gives to hearing impaired DUI drivers create a menace to society which the responsible hearing impaired community must find an embarrassment and a hindrance to their just cause.

A sort of balance has been struck, but it is insufficient from both points of view. In *Webb*, the trial court had held that " '*if* [Webb] had not understood the warnings after reading them more than one hour from the time that an interpreter was requested . . . then the *warnings and the results of the Intoximeter would have been admissible.*' " (Emphasis supplied.) Id. at 873. In *Woody*, supra at 450, we held that if the procedure in OCGA § 24-9-103 (b) (1) requiring police to request a qualified interpreter had been followed and a qualified interpreter "was not available within one hour after [the defendant] was taken into custody, the arresting officer could have proceeded with his investigation and the blood test under OCGA § 24-9-103 (b)

(2)."

As we held in *Webb*, supra at 874, subsection (b) (2) of OCGA § 24-9-103, allowing the police after one hour to "interrogate or take a statement" proves that the requirement of a qualified interpreter is "*not absolute.*" The requirement of a qualified interpreter and the unavailability of one do not vitiate the defendant's implied consent under OCGA § 40-5-55. So long as his rights are *conveyed* to him (*Webb* at 873) "[t]he State is under no duty to prove the suspect driver fully understood his rights under the implied consent law." Id. *The hearing impaired law cannot constitutionally revoke the hearing impaired driver's implied consent.* Therefore, under OCGA § 24-9-103 (b) (2), when the request has been made for an interpreter and none has been provided, the police may proceed under the implied consent law, as they have complied with the spirit and intent of the hearing impaired law. But they must wait that hour.

A law which requires police to wait one hour before proceeding with an investigation under the implied consent laws when it becomes obvious, from the first phone call to request an interpreter, that none will be forthcoming creates a problem. The legislature should change this law. If it wishes to give hearing impaired persons more rights than hearing persons, it may do so if it can do it constitutionally, but beyond adhering to the one-hour delay, we cannot do it. Thus we hold that under OCGA § 24-9-103 (b) (2), when the one-hour waiting period lapses, the police may proceed with their investigation under the implied consent laws. If, however, the impaired person intelligently waives the one-hour requirement as set forth in OCGA § 24-9-103 (b) (2), then the officer may proceed with written interrogatories and the impaired person should answer in writing, and the officer may then proceed under the implied consent law.

This appellant's rights under the implied consent law were not at least "conveyed" to her by a competent sign language interpreter within the meaning of the implied consent law; police did not wait one hour after requesting an interpreter before proceeding with their investigation; the advice given to appellant was inaccurate and misleading and she was denied her express request to have an independent test. The State's test in this case must therefore be suppressed.

*Judgment reversed. Johnson and Smith, JJ., concur.*

DECIDED OCTOBER 26, 1995.

*William H. Turner, Jr.*, for appellant.

*Keith C. Martin, Solicitor, Elizabeth A. Baker-Cofer, Assistant Solicitor*, for appellee.