## A96A0290. THE STATE v. HENDRIX.
### (471 SE2d 277)

McMurray, Presiding Judge.

Defendant was charged in an accusation with two counts of violating the Georgia Controlled Substances Act, and also with recidivism under OCGA § 17-10-7. He filed a motion in limine and motion to suppress "certain statements [he made] and . . . evidence [he provided] as a result of . . . interrogation . . . [conducted, although the] police did not obtain a qualified interpreter of the deaf as required by [OCGA §] 24-9-103." At the hearing on this motion, Sergeant Stanley Sutton of the Rome/Floyd Metro Task Force Drug Unit testified that he went to defendant's place of employment to interview defendant about some marijuana defendant's son had at school and which the son allegedly told school officials "came from his father and his father's home." Sergeant Sutton explained to defendant's supervisor that he "needed to talk to [defendant] concerning about marijuana that was in his home and that we wanted to retrieve that marijuana." "[T]hey informed [Sergeant Sutton] that [defendant's] hearing was impaired, meaning that he was deaf." Sergeant Sutton had taken "three months of the sign language at Floyd College many years ago and . . . can do a little bit of signing, but . . . not as sharp or [expert] as [defendant] or other people that have a hearing . . . (impairment)." Sergeant Sutton signed to defendant "that [he] was a policeman." Sergeant Sutton further signed to defendant: "That his b-o-y (Sergeant Sutton indicate[d] with hands) boy was arrested in school for pot (Sergeant Sutton indicate[d] with his hands). And the b-o-y, boy, said pot was daddy's — his (Sergeant Sutton indicate[d] with his hands)." When defendant indicated to Sergeant Sutton that "he wanted to see the pot, . . . I asked him to come down to the police station — . . . s-t-a-t-i-o-n — station to see pot that — you know, dad or him — not arrest. He understood."

"Once at the police station, [they] signed notes. . . . [Defendant] would write down notes on a piece of paper." At the task force office, defendant "[c]ame in and he looked at the pot and he just made that sound, yeah, my pot — my pot. But he talked about a container that the pot was in; that that was not his container; that the pot was his." Sergeant Sutton "got a consent form, basically talked to him — to read his consent form, if he would give us permission to go to his home to get the pot." Defendant signed this form after Sergeant Sutton explained "if he didn't give us permission or if he didn't sign this that we would have to talk to a judge and try to obtain a search warrant; there were two ways that we could go about, you know —." Thereafter, Sergeant Sutton, "along with [defendant] and Investigator Barry McElroy rode down to [defendant's] residence in Cave Spring." Although defendant was not under formal arrest at that

time, Sergeant Sutton "explained to him why [sic] we were en route there in leaving the office that if — talking about the police officer got the pot that he would be under arrest," that is, contingent upon finding marijuana in defendant's home. Defendant "showed [Sergeant Sutton] the pot on the dresser in the master bedroom." The police also "got others that were growing in the bathroom in little trays. . . ." Sergeant Sutton took defendant out of the home and "back to the [unmarked police] car because [defendant's] wife was really upset and so once [Sergeant Sutton] got to the car, [he] told [defendant] he was under arrest for the pot and he understood."

Sergeant Sutton affirmed that he is "not certified as a sign language interpreter[; . . . that he has not] kept up with the development of sign language and the changes in signs . . .[; and that he has not] had any other courses in it [since 1972 or 1973]." Sergeant Sutton also confirmed that he made no attempt to call or locate a certified interpreter for the deaf at any time.

The trial court denied defendant's motion to suppress in part but concluded that, once defendant made an incriminating statement at the police station, admitting to the possession of less than one ounce of marijuana, "he was in custody . . . and Defendant could not have believed he was free to leave. . . . Custody having been established, Defendant, a hearing impaired person as contemplated and defined by [OCGA §] 24-9-101 (2), [should have been] afforded the procedural protections of [OCGA §] 24-9-103." Since the "arresting law enforcement agency did not immediately request a qualified interpreter for the hearing impaired . . . before undertaking . . ." its investigation, the trial court suppressed any evidence obtained after defendant's initial incriminating statement. The State brings this direct appeal from that order, pursuant to OCGA § 5-7-1 (a) (4). *Held*:

1. The State first contends the trial court erred in its construction of the statutory language "taken into custody," as employed at OCGA § 24-9-103 (a), for purposes of determining when the arresting law enforcement agency must provide a qualified interpreter for a deaf suspect. The State argues that the trial court failed to follow applicable case law. Specifically, the State objects to a purported conclusion that, as a matter of law, *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) "and its progeny are not relevant to the facts before [the trial court] in the interpretation and application of O.C.G.A. § 24-9-103[.]" The record does not support this contention.

OCGA § 24-9-103 (a) provides: "The arresting law enforcement agency shall provide a qualified interpreter to any hearing impaired person whenever the hearing impaired person is taken into custody for allegedly violating any criminal law. . . ." That Code section further directs that the law enforcement agency shall immediately request a qualified interpreter and provides: "No interrogation,

warning, informing of rights, taking of statements, or other investigatory procedures shall be undertaken until a qualified interpreter has been provided; and no answer, statement, admission, or other evidence acquired from the hearing impaired person shall be admissible . . . unless such was knowingly and voluntarily given through and in the presence of a qualified interpreter." OCGA § 24-9-103 (b) (1).

"Under *Miranda v. Arizona*, 384 U. S. 436[, supra], persons must be advised of their rights with respect to interrogation after being taken into custody or otherwise deprived of their freedom of action in any significant way. [Cit.]" *Reinhardt v. State*, 263 Ga. 113, 114 (3) (a) (428 SE2d 333). A reasonable test of whether a person has been "taken into custody" for purposes of invoking the privilege against self-incrimination under the Fifth Amendment and Art. I, Sec. I, Par. XVI of the 1983 Georgia Constitution "recognizes the possibility of a more limited type of detention in which the defendant is not 'free to go' but [where] the Miranda warnings are not required at the *initial* contact." (Emphasis supplied.) *Shy v. State*, 234 Ga. 816, 818 (I), 819 (218 SE2d 599). "In making the distinction between custodial and noncustodial interrogation[, Georgia law] has outlined several criteria: 'these include probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation.' [Cit.] These all point to attempts by the police to gather incriminating information. [Cit.] All of these factors are significant elements to be weighed in determining the 'custody' issue. Of course, the police may not delay the [formal] arrest of a suspect or use a Terry rationale [*Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889)] as a subterfuge to coerce the suspect into incriminating himself without the benefit of Miranda warnings. [Cit.]" *Shy v. State*, 234 Ga. 816, 818 (I), 821, supra. This distinction between custodial and noncustodial interrogation has been recognized in the application of OCGA § 24-9-103. See *Allen v. State*, 218 Ga. App. 844 (463 SE2d 522); *State v. Woody*, 215 Ga. App. 448 (449 SE2d 615); *State v. Webb*, 212 Ga. App. 872 (443 SE2d 630).

At the conclusion of the suppression hearing, the trial court made the following observation before orally announcing its decision to grant defendant's motion in part: "I believe [once defendant reasonably felt he was not free to leave] that triggers the applicability of [OCGA §] 24-9-103. [OCGA §] 24-9-103 is not analogous to Miranda. Miranda goes to the pressure of someone being interviewed by the police while in custody. It is judicially made law. It is not the product of the statutes of the State of Georgia, and I am not free to give the same interpretation of the statute as the Court is to flesh out the requirements of Miranda on a case-by-case basis." In our view, this observation correctly characterizes OCGA § 24-9-103 (b) (1) as a stat-

utory exclusionary rule rather than a judicial exclusionary rule. Moreover, the trial court's order recognizes that if the circumstances require *Miranda* warnings to a non-hearing impaired suspect, then OCGA § 24-9-103 (a) requires the immediate request for a qualified interpreter in the case of a hearing impaired suspect. Otherwise, "no answer, statement, admission, or other evidence acquired from the hearing impaired person shall be admissible in any criminal or quasi-criminal proceeding. . . ." OCGA § 24-9-103 (b) (1). The trial court's order in the case sub judice shows that the trial court correctly looked at the totality of the circumstances, including the four factors itemized in *Shy v. State*, 234 Ga. 816, 818 (I), 819, supra, to determine whether defendant was in custody at the police station after he admitted to possessing marijuana, despite the fact that he was not *formally* arrested until much later, i.e., after he took the police to his home and showed them marijuana in his bedroom. Since the trial court's interpretation of the statutory language "taken into custody" is entirely consistent with the constitutional distinction between custodial and noncustodial interrogation, we find this enumeration to be without merit.

2. Next, the State contends the trial court erred in "ruling that as a matter of law, a person is in custody once he makes an admission which incriminates him. . . ." This contention is without merit.

In the case sub judice, the trial court was authorized to conclude that, notwithstanding Sergeant Sutton's subjective intent, defendant was the focus of the investigation due to the report that his son implicated him as the source of marijuana. The veracity and basis of knowledge of the son's report are a substantial basis for probable cause to believe that defendant still had marijuana in his home. See, e.g., *Futch v. State*, 178 Ga. App. 115, 116 (1) (342 SE2d 493). In the case sub judice, the trial court made an express finding that a reasonable person in defendant's situation would reasonably conclude that he was not free to leave. This is the proper inquiry under the constitutional test to determine whether routine questioning has evolved into a custodial detention and interrogation for the purpose of gathering incriminating evidence, where there has been no formal arrest. *Shy v. State*, 234 Ga. 816, 818 (I), 819, supra. "Factual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous. [Cits.]" *Johnson v. State*, 233 Ga. 58 (209 SE2d 629). See also *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474).

3. The State's third enumeration, that the trial court erred by "failing to recognize . . . [an] implicitly established . . . custodial requirement for O.C.G.A. § 24-9-103," has been considered and found to be without merit for the reasons discussed in Divisions 1 and 2.

Since it is undisputed that Sergeant Sutton never sought the assistance of a qualified interpreter for this hearing impaired defendant, "no answer, statement, admission, or other evidence acquired from the hearing impaired person shall be admissible in any criminal or quasi-criminal proceeding. . . ." OCGA § 24-9-103 (b) (1). See *Allen v. State*, 218 Ga. App. 844, 846 (1), 847, supra; *State v. Woody*, 215 Ga. App. 448, 450, supra.

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED MAY 8, 1996.

*Stephen F. Lanier, District Attorney, Lisa W. Pettit, Assistant District Attorney*, for appellant.

*Lloyd C. Burton*, for appellee.