## A00A2245. YATES v. THE STATE.
### (545 SE2d 169)

MILLER, Judge.

Following a nonjury trial, Scott Michael Yates was convicted of driving under the influence of alcohol to the extent that he was less safe to drive and of weaving over the roadway. On appeal, he claims the trial court erred in (1) denying his motion to suppress evidence of his refusal to submit to a state-administered chemical sobriety test and (2) denying his motion to dismiss. We reverse the DUI conviction because the arresting officer failed to comply with the statutory procedures for communicating with a hearing-impaired detainee.

"On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to upholding the findings and judgment."[1] However, the application of the law to undisputed facts is subject to de novo appellate review.[2]

The evidence shows that on August 16, 1998, at approximately 2:30 a.m., a police sergeant saw a van cross over the fog line on the right side of the road twice and then strike the curb while making a right turn. The sergeant pulled the van over and asked Yates, who was driving, for his license and registration.

The State stipulated that Yates was deaf. Yates told the sergeant he could read lips, and the sergeant understood that to mean Yates was hearing impaired. Yates complied with the request for license and registration and exited the van at the sergeant's request. Yates smelled of alcohol, his eyes were red, and he was unsteady on his feet. When questioned by the sergeant, Yates admitted he had had a couple of drinks. Yates agreed to undergo an alco-sensor test and tested positive for alcohol, but refused to continue with field sobriety tests.

The sergeant arrested Yates, placed him in the police car, and read him the implied consent notice. Yates told the sergeant he could not understand him. The sergeant asked Yates to read a card containing the implied consent notice along with him as he read the notice aloud to Yates. Yates repeatedly stated that he did not understand the sergeant. Yates reminded the sergeant that he was hearing impaired and announced he wanted his interpreter. The sergeant told Yates that an interpreter might be available through the 911 operator. Yates informed the sergeant that he wanted his own interpreter and that he would not take a breath test until his personal interpreter was there. The court denied the motion to suppress the evidence of Yates's refusal of a breath test.

1. Yates contends the trial court erred in denying his motion to

---

[1] (Citation omitted.) *Pickens v. State*, 225 Ga. App. 792 (1) (484 SE2d 731) (1997).
[2] *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994).

suppress, arguing that he was not properly advised of his implied consent rights. We agree.

Subject to OCGA § 40-6-392, motorists suspected of violating OCGA § 40-6-391 are legislatively deemed to consent to chemical testing of blood, breath, urine, or other bodily substances to determine the presence of alcohol or any other drug.[3] And refusal to submit to such testing is admissible in evidence against the motorist.[4] But the failure of the arresting officer to adequately warn the motorist of his right under OCGA § 40-6-392 (a) (4) to independent chemical testing will render the test result inadmissible[5] and will justify the refusal to submit to a State-administered test, rendering such refusal inadmissible.[6]

OCGA § 24-9-103 imposes additional obligations when a law enforcement agency takes a hearing-impaired person into custody. In such cases, the law enforcement agency is required to immediately request a qualified interpreter from the Department of Human Resources.[7] "No interrogation, warning, informing of rights, taking of statements, or other investigatory procedures shall be undertaken until a qualified interpreter has been provided."[8] If an interpreter is requested but not available one hour after the request is made, an interrogation may be conducted in writing.[9]

*State v. Woody*[10] held that these requirements are mandatory:

> OCGA § 24-9-103 is clear in its application to *any* hearing impaired person taken into custody for allegedly violating *any* criminal law. Furthermore, the requirements in the statute are mandatory, and if not met, the evidence acquired is not admissible under the statute.[11]

Here, the arresting police sergeant failed to comply with the requirements of OCGA § 24-9-103. He did not try to obtain a qualified interpreter, nor did he communicate with Yates in writing after requesting an interpreter and waiting an hour for one to be provided.

The trial court nevertheless declined to suppress evidence of Yates's refusal to submit to the State-administered sobriety test. The trial court distinguished *State v. Woody* because "the evidence in this

---

[3] OCGA § 40-5-55 (a).
[4] OCGA § 40-6-392 (d).
[5] *Nelson v. State*, 135 Ga. App. 212, 214 (217 SE2d 450) (1975).
[6] *State v. Leviner*, 213 Ga. App. 99, 103 (3) (e) (443 SE2d 688) (1994). See *Garrett v. Dept. of Public Safety*, 237 Ga. 413, 415 (2) (228 SE2d 812) (1976).
[7] OCGA § 24-9-103 (b) (1).
[8] Id.
[9] OCGA § 24-9-103 (b) (2).
[10] 215 Ga. App. 448 (449 SE2d 615) (1994).
[11] (Emphasis in original.) Id. at 450.

case indicates that the Defendant had some hearing ability." There are two problems with this conclusion. First, the evidence does not support it. The State expressly stipulated that Yates was deaf. Yates even told the sergeant that he could read lips as soon as he was stopped, and Yates was, consistent with an ability to read lips, able to communicate with the sergeant. But an ability to read lips is *not* "some hearing ability." Second, the attempted distinction is irrelevant. "Hearing impaired" does not require a complete absence of hearing ability, but only an impairment that prohibits the person from understanding oral communications when spoken in normal conversational tone.[12] Since it was stipulated that Yates was deaf, he certainly could not be found to hear let alone understand normal conversational tones. Only through his lip-reading capabilities, not through hearing normal conversational tones, was he able to understand the officer's oral communications. Thus, he was indisputably hearing impaired under the statute.

The trial court also found that Yates failed to present the sergeant "any type of identification indicating that he was deaf." This also is irrelevant. When first stopped, Yates immediately informed the sergeant that he read lips and later stated that he was hearing impaired while the sergeant was trying to read him the implied consent notice. Thus, the sergeant was aware that he could proceed with the implied consent notice only in compliance with the law governing communication with the hearing impaired.

The trial court also found that "the Defendant did not agree to a State-supplied interpreter, he demanded his own personal interpreter." Based on this finding, the State argues that Yates's demand for his own interpreter effectively negated the statutory requirement that the arresting agency attempt to obtain a qualified interpreter. What the law requires is that the notice be conveyed and, in the case of the hearing impaired, that it be conveyed by a "qualified interpreter," or, if in certain circumstances an interpreter is not available, in writing. If the sergeant had obtained a "qualified interpreter" to convey the notice to Yates, then that would have been sufficient regardless of Yates's alleged preference for his own personal interpreter. Yates's statement that he wanted his own interpreter as opposed to a State-provided interpreter certainly did not excuse the sergeant from complying with the requirements of OCGA § 24-9-103 or excuse the trial court from enforcing its provisions. OCGA § 24-9-103 does not provide for judicial discretion in these matters and therefore must be strictly complied with by the court.

Lastly, the State argues that Yates waived the right to have a

---

[12] OCGA § 24-9-101 (3).

State-supplied interpreter. But any waiver of that right must be made in writing to be effective.[13] The statutory requirements were not satisfied, and Yates did not waive his statutory protections. Accordingly, Yates was entitled to suppress evidence of his refusal to submit to a State-administered test of his breath, blood, urine, or other bodily substances.[14] Consequently, his DUI conviction must be reversed due to the erroneous admission of his justified refusal to submit.[15]

2. Yates was arrested on August 16, 1998, and issued Uniform Traffic Citations for DUI and weaving over the roadway in violation of OCGA § 40-6-48. On March 14, 2000 (the day before trial), the assistant solicitor preferred an accusation specifying that the DUI charge was for being a less safe driver. The trial proceeded, and, after the State rested, Yates moved for a directed verdict on the ground that the accusation was drawn and served only one day before trial. The denial of this motion is enumerated as error. Yates should have objected to the accusation before trial rather than waiting until after the State completed its presentation of the evidence.[16] "All exceptions which go merely to the form of an indictment or accusation shall be made before trial."[17] Accordingly, Yates waived any valid exceptions to the mere form of the accusation by failing to urge them in a written pre-trial special demurrer.[18]

*Judgment affirmed as to weaving conviction and reversed as to DUI conviction. Pope, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 12, 2001.

*Charles G. Harbin, Jr.*, for appellant.
*A. Robert Tawse, Jr., Solicitor, Arthur J. Creque, Assistant Solicitor*, for appellee.

---

[13] OCGA § 24-9-105.
[14] *Allen v. State*, 218 Ga. App. 844, 847 (1) (463 SE2d 522) (1995). Accord *State v. Hendrix*, 221 Ga. App. 331, 335 (3) (471 SE2d 277) (1996).
[15] *Garrett v. Dept. of Public Safety*, supra, 237 Ga. at 415.
[16] Uniform State Court Rule 31.1.
[17] OCGA § 17-7-113.
[18] *Dunbar v. State*, 209 Ga. App. 97, 98 (2) (432 SE2d 829) (1993).