## A95A1313. BROWN v. THE STATE.
(462 SE2d 420)

Beasley, Chief Judge.

A jury convicted Jake Brown of driving under the influence of alcohol in violation of OCGA § 40-6-391 (a) (4). He appeals this conviction after having been acquitted of homicide by vehicle in the first degree (OCGA § 40-6-393), driving too fast for conditions (OCGA § 40-6-180), and failure to wear a safety belt (OCGA § 40-8-76.1). The charges arose when Brown and his friend were drinking and driving

around visiting friends. Their car rounded a curve, and spun out of control. The friend died in the resulting crash and Brown sustained serious injuries which required immediate hospitalization.

The investigating officer first contacted Brown at the hospital. Upon entering Brown's room, the officer noticed the odor of alcohol and advised Brown of his implied consent rights. The officer did not remember whether the advice was given before or after the arrest. In any event, the arrest warrant was issued almost two weeks after the accident.

Prior to trial, Brown moved to exclude intoximeter results, arguing that the State failed to provide him proper notice of his implied consent rights. No intoximeter test was administered, but the court found that Brown's motion sufficiently raised the issue of the admissibility of the blood test. On the day of trial, Brown filed a "motion in limine and renewed motion to suppress evidence," which asserted that the results of the blood alcohol test at the hospital should be excluded because he was not in custody when it was administered and the test was not performed in compliance with administrative regulations, under the auspices of the State Patrol, or at the behest or expense of the State. The court heard and denied the motion.

1. Brown enumerates as error the denial of these motions. He contends that the implied consent statute did not authorize the extraction of his blood because (1) he was not under arrest when the blood sample was taken and (2) the State failed to present evidence that he was driving.

The results of the blood test were admissible. OCGA § 40-5-55 (a) states that "any person who operates a motor vehicle upon the highways . . . throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities." Because this case involved a fatality, an arrest prior to testing was not required to activate Brown's implied consent. *Lewis v. State*, 215 Ga. App. 796 (452 SE2d 228) (1994) (pre-arrest test admissible when serious injury).

Brown argues that the admission was error because OCGA § 40-5-55 applies only to persons operating a vehicle and the officer lacked probable cause to believe he was driving at the time of the accident. OCGA § 17-5-30 requires that motions to suppress "be in writing and state facts showing that the search and seizure were unlawful." Unless this requirement is satisfied, the State is under no obligation to present evidence in rebuttal. *Wilson v. State*, 197 Ga. App. 181, 183 (397

SE2d 744) (1990). Brown failed to raise this ground in his written motion, although he did so cursorily at the suppression hearing. Thus, denial of the motion based on the State's failure to prove that Brown was driving was not error. Id. We decline to follow the non-binding cases Brown relies on for the proposition that the admission of pre-arrest test results violates the Fourth Amendment.

2. Also enumerated as error is the denial of Brown's motion to conduct voir dire in panels of 12 as being in violation of OCGA § 15-12-131. It is not argued that this procedure constituted harmful error. See *Oliver v. State*, 207 Ga. App. 681, 682 (4) (428 SE2d 681) (1993).

Prior to jury selection, the trial court stated "I am going to permit the state and defense to pose general voir dire questions to the panel of thirty-four, as you see fit. After general voir dire, the state and defense will be permitted to pose individual voir dire questions as each sees fit. And as far as panels of twelve: there is a panel of twelve in the jury box; there are panels of twelve in the first two rows; and ten seated on the third row. They can be voir dired any way you see fit." Both parties conducted general voir dire, and neither desired any individual voir dire. When asked if he had any objection to the 34-member panel from which the jury was to be selected, Brown answered in the negative.

OCGA § 15-12-131 provides for the voir dire examination of jurors in panels. It states, "it shall be the duty of the court, upon the request of either party, to place jurors in the jury box in panels of 12 at a time, so as to facilitate their examination by counsel." OCGA § 15-12-131. Conducting the examination in panels of 12, each segregated from the others without being seated in the jury box seriatim, is not reversible error. *Perez v. State*, 258 Ga. 343, 344 (2) (369 SE2d 256) (1988). That is the case here.

3. Brown argues that the trial court denied him the right to a fair and impartial jury by disallowing his exercise of peremptory challenges and reinstating three jurors he struck. He limits his argument to the practice of reinstating the excluded jurors and does not contest the court's implicit finding that he exercised his peremptory challenges in a discriminatory manner.

For jury selection, the trial court employed a silent strike method of jury selection so no jurors knew which party excused them. Brown used his peremptory challenges to strike eleven white jurors and one black alternate. The State challenged this selection, contending that the white jurors had been excluded on account of their race. The clerk of court testified that Calhoun County was 54 percent black and 46 percent white and the jury as selected was 75 percent black and 25 percent white. The court found that the State made out a prima facie case of discrimination, implicitly rejected the race-neutral reasons Brown offered for striking the jurors, and reinstated three of the

white jurors over Brown's objection. The jury ultimately consisted of a panel of six black and six white jurors.

The United States Constitution prohibits criminal defendants from exercising their peremptory challenges to purposefully discriminate on the basis of race. *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992). In *Batson v. Kentucky*, 476 U. S. 79, 99, n. 24 (106 SC 1712, 90 LE2d 69) (1986), the seminal case, the Supreme Court relegated to the states the methods for eliminating discriminatory peremptory challenges. It "expressed no view" on the propriety of reinstating improperly challenged jurors. *Batson*, supra, 99, n. 24.

Consistent with *Batson's* directive to fashion appropriate methods, we have at least implicitly condoned the practice of reinstating improperly challenged jurors. *McKibbons v. State*, 216 Ga. App. 389, 390-391 (455 SE2d 293) (1995); *Buchanan v. State*, 215 Ga. App. 143, 145-146 (449 SE2d 660) (1994). "The 'prohibition of the discriminatory exercise of peremptory challenges does not violate a defendant's Sixth Amendment right to a trial by an impartial jury. . . . [Cits.]' [Cit.]" *McKibbons*, supra at 391. When a *Batson* challenge results in a finding that jury selection was not racially neutral and when, as here, the jurors remain unaware of the party who struck them, reinstating improperly challenged jurors does not abridge the defendant's right to a fair and impartial jury.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 11, 1995.

*Dorough & Sizemore, Kermit S. Dorough, Jr.,* for appellant.
*J. Brown Moseley, District Attorney, Ronald S. Smith, Assistant District Attorney,* for appellee.