A96A1922. SEITH v. THE STATE.
(484 SE2d 690)

POPE, Presiding Judge.

After being involved in a car accident that resulted in a fatality, defendant Scott Thomas Seith was convicted during a bench trial of

second degree vehicular homicide and driving with a prohibited substance in his blood. See OCGA §§ 40-6-393 (b); 40-6-391 (a) (5). On appeal, he contends the trial court erred in failing to suppress the evidence of a blood test demonstrating that he had marijuana in his blood at the time of the accident, and thus, that his conviction for driving with a prohibited substance in his blood should be reversed. Defendant argues that the results of the blood test were inadmissible because defendant had actually been arrested when he was asked to sit in a patrol car at the scene of the accident, but was not given his implied consent rights at that time as required by OCGA § 40-6-392 (a) (4). Finding no merit to defendant's argument, we affirm.

Under OCGA § 40-6-392 (a) (4), a person who is arrested for violating any of the provisions of OCGA § 40-6-391 must be informed of his implied consent rights at the time of arrest, or as soon thereafter as circumstances may warrant. See *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983). "The . . . test for determining whether a suspect has been arrested is whether a reasonable person in the suspect's position would have thought [his] detention would not be temporary." (Citation omitted.) *State v. Corbett*, 205 Ga. App. 554, 556 (423 SE2d 38) (1992).

In the instant case the evidence shows that defendant's truck was involved in a collision with a truck driven by Tony Sherrer at Bethel Road's intersection with State Highway 20 in Rockdale County. It is undisputed Sherrer was seriously injured. Unable to question Sherrer, the officer that responded to the accident, Deputy Ellington, asked defendant some basic questions about the collision. Defendant was cooperative and did not appear to be intoxicated or under the influence of any substance. Defendant told Ellington that defendant had stopped at the stop sign located on Bethel Road before attempting to enter the intersection. Defendant claimed that he proceeded through the Bethel Road stop sign into the intersection after seeing no cars on Highway 20. He further claimed that once he entered the intersection, he failed to notice any approaching cars until his truck was struck by Sherrer's truck.

After obtaining the above information and documenting some of the physical evidence at the scene, Ellington told defendant that Georgia law required him to obtain a blood sample from defendant because he had been involved in a serious accident. See OCGA § 40-5-55 (a). Defendant agreed. Ellington then asked defendant to sit in the back of Ellington's patrol car while he finished documenting evidence, some of which was temporary in nature. Ellington informed defendant that the reason he wanted him to sit in the patrol car was for defendant's own benefit in that Ellington wanted to make sure defendant did not obtain and ingest any intoxicants prior to the blood test. Defendant sat in the patrol car with the window rolled down

until Ellington finished investigating the scene and collecting debris therefrom. At no time did Ellington ever tell defendant he was under arrest or would be charged with anything.

Subsequently, Ellington transported defendant to a hospital for the blood test. They arrived at the hospital within 15 to 20 minutes of the time defendant first sat down in the patrol car, and within approximately an hour of the accident. Upon arrival, Ellington read defendant his implied consent rights. Defendant stated that he understood his rights and agreed to take the state administered blood test. After the blood test, Ellington discovered Sherrer had died and told defendant. Defendant was advised that no charges were pending against him at that time, and was allowed to leave the hospital. Defendant was not charged with any violations until Ellington completed his investigation the day after the accident.

Applying the abovementioned objective test to the facts presented in the instant case, we conclude that defendant was not under arrest prior to the time he took the blood test in question. Based on the circumstances surrounding the accident and the discourse between Ellington and defendant there is simply no objective evidence from which a reasonable person in defendant's position could have concluded that his detainment would be more than temporary. Absent an arrest, the dictates of OCGA § 40-6-392 (a) (4) are not applicable.

Moreover, it is clear from Ellington's unrefuted trial testimony that defendant was requested to take a blood test only because he was involved in an accident with serious injuries. OCGA § 40-5-55 (a) specifically authorizes pre-arrest testing of the type in this case, including drug screening, for any person operating a motor vehicle in this state who is involved in a traffic accident resulting in serious injuries or fatalities. See *Brown v. State*, 218 Ga. App. 469, 470 (1) (462 SE2d 420) (1995); *Lewis v. State*, 215 Ga. App. 796 (452 SE2d 228) (1994). Although OCGA § 40-5-55 (a) provides that such "[t]est or tests shall be administered as soon as possible to any person who operates a motor vehicle upon the highways or elsewhere throughout this state who is involved in any traffic accident resulting in serious injuries or fatalities[,]" it does not specifically state when the implied consent warning must be read to such persons in the absence of an actual arrest.[1] Lacking any legislative direction on the matter, we hold that absent an arrest, when possible, a person involved in an accident resulting in serious injuries or fatalities must be informed of

---

[1] In cases involving accidents with serious injuries or fatalities where an arrest is made prior to any state administered testing, the requirement found in OCGA § 40-6-392 (a) (4) that the arrested individual be given his or her implied consent rights at the time of arrest is applicable under the express terms of OCGA § 40-5-55 (a).

his implied consent rights within a reasonable amount of time after the accident, as determined by the circumstances, and, when possible, before the administration of any state test or tests authorized by and performed in accordance with OCGA §§ 40-5-55 and 40-6-392.

Based on the facts and circumstances involved here, including the nature of the accident and the need for Ellington to document and retrieve temporary evidence from the scene in furtherance of his investigation, we hold that defendant's blood test was administered as soon as practicable under the circumstances. We also hold that defendant was advised of his implied consent rights within a reasonable amount of time after the accident, and it is undisputed that this was before he was given the blood test. Accordingly, we conclude the trial court did not err in denying defendant's motion to suppress the results of his blood test. And, based on the results of that test, defendant's conviction for driving with a prohibited substance in his blood was authorized under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Andrews, C. J., and Smith, J., concur.*

DECIDED MARCH 7, 1997 —
RECONSIDERATION DENIED MARCH 25, 1997.

*Terry N. Massey*, for appellant.
*Cheryl F. Custer, District Attorney, Sara D. Yarbrough, Assistant District Attorney*, for appellee.