## A99A1437. JOINER v. THE STATE.
(522 SE2d 25)

ELDRIDGE, Judge.

This Court granted defendant Teresa Ann Joiner's application for interlocutory appeal from the denial of her motion to suppress blood alcohol test results. In her sole enumeration of error, the defendant contends that the trial court erred in denying her motion because her implied consent notice was untimely under OCGA § 40-6-392 (a) (4). We affirm the trial court's ruling.

1. The defendant's reliance on OCGA § 40-6-392 (a) is misplaced. This statute provides that, when a person is arrested for DUI under OCGA § 40-6-391, an implied consent notice for chemical testing must be given *at the time of the arrest for DUI* in order for the test results to be admissible in a subsequent civil or criminal trial. Accordingly, the defendant asserts that, because she allegedly was under arrest within minutes of a fatal traffic incident, the failure of police officers to give her the implied consent notice at the time of arrest makes the results of her chemical tests inadmissible at trial. However, the defendant's argument fails for two reasons.

(a) The record clearly demonstrates that the defendant was not arrested for DUI until November 1998, five months after the traffic

incident. The facts of this case are as follows: At 11:55 p.m. on June 11, 1998, Officer Jimmy Moreland of the Newton Police Department responded to a report that a pedestrian had been involved in a traffic incident on Highway 91 north of Newton. When Officer Moreland arrived at the accident scene, the defendant was kneeling over the body of her husband, Stokes Joiner. The defendant had run over her husband's head with her truck. Stokes Joiner had died of a massive head wound before the police arrived. Officer Moreland testified that the defendant repeatedly cried out "I killed my husband" and "Why, Stokes? Why?" Officer Moreland testified that he had been surprised at the scene, because Stokes Joiner had been one of his bosses.

The officer advised the defendant of her *Miranda*[1] rights, took her into custody because she was extremely distraught, and handcuffed her before placing her in the back of the police car. However, Officer Moreland testified at the motion hearing that, when he took the defendant into custody, he had not had the opportunity to investigate the scene; did not intend to question the defendant; had not conducted field sobriety tests; had not charged the defendant with any crime; and thought that the victim's death was the result of an accident.

Approximately 30 minutes later, Officer Edward Etheridge of the Georgia State Patrol arrived at the scene. He testified that, by this time, the defendant was in the back seat of the patrol car and was "very emotional. She was yelling. She was screaming. She was trying to get out of the . . . car, indicating that she wanted to run to Mr. Joiner." Officer Etheridge testified that the defendant was not under arrest when he arrived at the scene; that the defendant was taken into custody because she was the driver of the vehicle that ran over the victim; and that he asked the other officers to transport the defendant to the police station because she was trying to "do things there that we couldn't allow her to do," i.e., get out of the police car and run to the victim. Deputy John Lilly transported the defendant to the sheriff's department. After the defendant was removed from the scene, Officer Etheridge conducted an on-site investigation of the incident.

Special Agent John Pike from the Georgia Bureau of Investigation ("GBI") interviewed the defendant at the sheriff's department at approximately 3:28 a.m. regarding the incident. At approximately 5:00 or 6:00 a.m., immediately following his on-site investigation, Officer Etheridge met with the defendant at the sheriff's department and gave her an implied consent notice, as well as another *Miranda* warning, because she had been involved in a serious collision which

---

[1] *Miranda v. Arizona*, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966).

caused a fatality. See OCGA §§ 40-5-55 (a); 40-5-67.1.

The defendant was taken to a hospital in Camilla and was given a blood test at 7:11 a.m. According to Officer Etheridge, the defendant did not request or receive an independent blood alcohol test. The defendant was not charged with any crime at that time and was released from police custody following the blood test without being booked and without bond.

Months later, based upon the results of the defendant's blood test, Officer Etheridge issued two Uniform Traffic Citations to the defendant for first degree vehicular homicide and DUI. On November 6, 1998, almost five months after the traffic incident, Officer Etheridge swore out an arrest warrant for the defendant on the same charges. An indictment on these charges was issued on November 16, 1998.

Accordingly, the record in this case demonstrates that the defendant received an implied consent notice and blood test *before* her arrest for DUI. Therefore, the notice was not untimely under OCGA § 40-6-392. since that statute does not apply to situations where the notice and test *precede* a DUI arrest.

(b) Further, it does not matter whether the defendant was, in fact, under arrest for any other crime besides DUI prior to the implied consent warnings, because the requirement of OCGA § 40-6-392 (a) (4) does not apply to such arrests. Although OCGA § 40-6-392 (a) (4) does not contain language that expressly limits an "arrest" to one based upon a violation of OCGA § 40-6-391 (the DUI statute), OCGA § 40-6-392 as a whole addresses *only* the admissibility of evidence in a trial based on a violation of OCGA § 40-6-391. This Court

> must seek to give meaning to each part of the statute and to avoid constructions which render a portion of the statute mere surplusage. A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto. Finally, it is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning.

(Citations and punctuation omitted.) *Holmes v. Chatham Area Transit Auth.*, 234 Ga. App. 42, 44 (505 SE2d 225) (1998). See also *Jordan v. State*, 223 Ga. App. 176 (477 SE2d 583) (1996). In this case,

the relevant DUI statutes include, inter alia, OCGA §§ 40-5-55; 40-5-67.1; 40-6-391; and 40-6-392.

(i) To construe OCGA § 40-6-392 so as to require that an implied consent notice be given "at the time of arrest" to *any* person involved in a traffic incident which results in a serious injury or death, where it may be unclear as to whether the person was driving under the influence, creates a serious conflict with the express provisions of OCGA §§ 40-5-55 and 40-5-67.1. OCGA § 40-5-55 (a) reads as follows:

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 *or if such person is involved in any traffic accident resulting in serious injuries or fatalities. . . .* The test or tests shall be administered *as soon as possible* to any person who operates a motor vehicle upon the highways or elsewhere throughout this state who is involved in any traffic accident resulting in serious injuries or fatalities.

(Emphasis supplied.) See also OCGA § 40-5-67.1 (a); *Stevenson v. State*, 264 Ga. 892, 893 (453 SE2d 18) (1995). As to testing that follows a person's involvement in such traffic accident, it is not required that the person be arrested prior to such testing. *Seith v. State*, 225 Ga. App. 684, 686 (484 SE2d 690) (1997); *Brown v. State*, 218 Ga. App. 469, 470 (1) (462 SE2d 420) (1995); see also *Stevenson v. State*, supra. However, *at the time such tests are requested,* an implied consent notice must be given. OCGA § 40-5-67.1 (b).[2]

The clear purpose of such provisions is to mandate chemical testing in certain cases, particularly those in which the signs and symptoms of DUI may be masked by the driver's injuries or may not be immediately evident because of the confusion at the scene of a traffic incident. By requesting and performing chemical testing under these circumstances, a determination can be made *later* as to "whether a violation of [OCGA §] 40-6-391 has occurred, so that the person may

---

[2] If an individual submits to such testing by the State, they also are entitled to additional independent tests at their own expense. Id. An individual has the right to refuse such testing under OCGA § 40-5-67.1 (d), and the consequences for such refusal include suspension of one's driver's license or admission of such refusal in a criminal trial. OCGA §§ 40-5-67.1 (d); 40-6-392 (d).

in addition be charged with it, and to provide proof thereof." *Davis v. State*, 187 Ga. App. 517, 519 (370 SE2d 779) (1988).

(ii) Without this statutory authorization allowing giving the implied consent notice and chemical testing absent an arrest, law enforcement officers are caught in a quandary, i.e., in order for the results of a chemical test to be admissible at trial on DUI charges resulting from a traffic incident involving serious injuries or fatalities, police officers *must* arrest the driver for DUI and give them an implied consent notice upon such arrest, even if there was insufficient probable cause at the time of the incident for an arrest based upon DUI. See *State v. Burke*, 230 Ga. App. 392 (496 SE2d 755) (1998); *Davis v. State*, supra. Such interpretation of this statute is contrary to the law and public policy of this state and is expressly rejected by this Court.

(iii) Further, the legislative intent to allow chemical testing under these circumstances at times other than "at the time of arrest" is demonstrated in the timing of the adoption of these statutes. OCGA § 40-6-392 requiring notice "at the time of arrest" was adopted in 1983. Ga. L. 1983, p. 1000, § 14. Six years later, in 1989, the legislature adopted the provision of OCGA § 40-5-55 (a) requiring that chemical testing for drivers involved in certain traffic incidents be administered "as soon as possible." Ga. L. 1989, p. 1698, § 1. OCGA § 40-5-67.1, mandating that an implied consent notice be given at the time the chemical test is requested, was not adopted until 1992.

It is presumed that the legislature enacts statutes with "full knowledge of the existing condition of the law and with reference to it." (Citations and punctuation omitted.) *Hillman v. State*, 232 Ga. App. 741, 743 (1) (b) (503 SE2d 610) (1998). One can presume that the legislature, in subsequently adopting OCGA §§ 40-5-55 and 40-5-67.1, intended to provide for the admissibility of chemical test results in situations where a person is arrested for DUI *after* a chemical test reveals his or her intoxication, as in this case.

Therefore, it does not matter whether the defendant had been arrested for vehicular homicide or any other crime *besides DUI* prior to the informed consent and chemical test. This Court cannot construe OCGA § 40-6-392 (a) (4)'s "at the time of arrest" implied consent notice requirement as applying to *any* arrest, but only to DUI arrests which occur *prior* to an implied consent notice. This Court determined in Division 1 (a), supra, that the defendant was not under arrest for DUI prior to the implied consent notice and chemical testing. Accordingly, the prohibitions of OCGA § 40-6-392 (a) do not apply in this case.

2. The only remaining issue is whether the notice was timely under OCGA §§ 40-5-55 and 40-5-67.1. Reading such statutes in pari materia, the required timing of the implied consent notice for a per-

son who has been driving a vehicle in this state, is involved in a traffic incident resulting in serious injuries or a fatality, and is not arrested at that time for a violation of OCGA § 40-6-391 is as follows: (a) law enforcement officers must administer chemical tests for alcohol and drugs *as soon as possible*, and (b) the implied consent notice must be given *at the time such test is requested*, which may or may not be at the time of actual testing.

Because such incidents often involve extensive investigation at the scene by police officers, removal of victims and wreckage from the scene, and various other factors which could potentially delay this chemical testing, the determination of whether the implied consent notice and tests were given in a timely manner must necessarily be determined by the individual circumstances of each case. See generally *Edge v. State*, 226 Ga. App. 559, 561 (487 SE2d 117) (1997); *Seith v. State*, supra at 687. In reviewing the trial court's determination as to timeliness on appeal,

> [w]hile the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations and punctuation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). Further, "[t]his Court must construe the evidence most favorably to upholding the trial court's judgment in this regard. [Cits.]" *State v. Burke*, supra at 393.

In this case, the trial court applied the wrong standard when it considered whether the implied consent notice was untimely when not given "at the time of arrest," under OCGA § 40-6-392 (a) (4). See Division 1, supra. However, even under this stricter standard, the trial court found that the circumstances of this case warranted such delay. We agree.

The defendant was discovered on the highway near her truck and her dead husband's body at 11:55 p.m. The defendant was "yelling" and "screaming" when placed into the police car by the investigating officers. At this time, there was a "fair risk" that she "would not have been able to make an intelligent choice concerning the state's request for a blood test, and there also was a fair risk that [she] would not have been able to understand [her] right to undergo an independent test." *Townsend v. State*, 236 Ga. App. 530, 532 (1) (b) (511 SE2d 587) (1999).

Further, when GBI officers questioned the defendant three

hours later, Officer Etheridge still had not returned from the scene of the incident and the defendant had not been charged with any crime. As soon as he finished investigating the scene, Officer Etheridge met with the defendant and gave her an implied consent notice and *Miranda* warnings. Shortly after the blood test, the defendant was released from custody without being charged.

Under the unique circumstances of this case, we find that the defendant received a timely implied consent notice under OCGA §§ 40-5-55 and 40-5-67.1. There was no error.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED AUGUST 11, 1999 —
RECONSIDERATION DENIED SEPTEMBER 8, 1999.

*Billy M. Grantham,* for appellant.
*J. Brown Moseley, District Attorney,* for appellee.