## 72372. HOOD v. THE STATE.
### (346 SE2d 867)

BIRDSONG, Presiding Judge.

Leon Hood appeals his conviction of aggravated assault and possession of a firearm by a convicted felon. Hood was found guilty by a jury of shooting Marcus Polite with a pistol, and following his conviction he entered a plea of guilty to possession of a firearm by a convicted felon.

On the morning of September 14, 1984, Marcus Polite was in a McDonald's restaurant in Savannah placing his breakfast order when Hood came up behind him and asked him if he had a sister by the name of Iris Polite. Polite replied that he did and turned back toward

the counter to wait for his order. Polite testified that he was pushed from the rear and the side by Hood, and he asked Hood if he could not wait. But, Hood attempted to push him out of the line and Polite pushed him back. Polite said Hood hit him in the face and he hit Hood with his fist and saw his nose bleed. Bystanders and McDonald's employees attempted to stop the fight, but Polite said that Hood produced a pistol and shot him in the arm, chest, side and back. Witnesses estimated that five or six shots were fired. Polite had "[n]o doubt at all" that it was Hood with whom he fought, and it was Hood who shot him.

On cross-examination, Polite admitted he struck Hood "in the nose or the mouth" with "everything he had. . . ." Polite said he did not have a weapon and the police found no weapon on Polite or in the vicinity of the fight. Several McDonald's employees saw the fight and identified Hood as a participant in the fight and saw him shoot Polite. Jerry Washington saw blood on Hood's lip, saw him pull a gun and fire it five or six times. Ruby Goodine saw Polite hit Hood on the side of his mouth and saw Hood bleeding from his mouth, and then saw Hood draw his pistol and start shooting. She testified there was "[n]o question" that Hood shot Polite. Michael Jones saw Polite and Hood fighting and saw blood on Hood and then heard five or six shots. Joanne Campbell saw Hood fighting with another man, and saw him pull his pistol and shoot at the other man. Most of the McDonald's employees and the victim saw the man with Hood hold Hood and attempt to break up the fight.

Hood's version of the incident was that the man who was with him, Arthur Scott, got into an argument with Polite and he attempted to break up the fight when Scott pulled a pistol and shot Polite. A dentist testified that if an individual was struck in the nose or mouth by another person, "with everything he had," it would take at least three to four days for the visible effects to dissipate. If the tissue was crushed, then it would take ten days to two weeks. One of the McDonald's employees said she did not see any blood on Hood's face, but she did see him produce a revolver and then heard a shot. The jailer who confined Hood after his arrest did not see any visible injury to Hood's face. The jury found Hood guilty as charged. Thereafter, Hood entered a plea of guilty to a charge of possession of a weapon by a felon. The defendant brings this appeal. *Held*:

1. The defendant alleges he was denied his "federal and state constitutional rights to due process" to "confront and cross-examine witnesses and to call witnesses on his own behalf," and was not permitted "to test the witness' recollection, to probe into the details of his alibi, or to sift his conscience so that the jury might judge for itself whether another witness' testimony was worthy of belief," nor was he permitted "to present witnesses in his own defense" and to

have "compulsory process for obtaining witnesses in his favor. . . ."

Except for the refusal of the trial court to permit Arthur Scott to stay in the court and to be presented to the state's witnesses for identification, and the refusal of the court to permit the defendant to impeach his own witness, Scott, by introducing the reason why he was in jail, we can find no factual basis in the record for the remaining claims of error. There is no evidence that defendant was refused the right to call witnesses in his own behalf, or to test a witness' recollection. "Alibi" was not involved. Both Hood and Scott admitted their presence in McDonald's when the fight and shooting occurred. We found no instance of any refusal by the court to permit counsel to "sift" the "conscience" of a witness.

Counsel argues that defendant's "Fifth and Sixth Amendment rights of due process of law" were denied "when the trial court refused to allow appellant to examine Arthur Lee Scott as to his violent background." Defendant called Scott as his witness and after asking him where he currently resided, and being informed that Scott was in the county jail, he asked him "what have you been arrested for?" The refusal of the trial court to require an answer was not error. A party may not impeach his own witness without a showing of entrapment. OCGA § 24-9-81. And, the reason that a person was arrested was not relevant to any issue before the trial. The proper method of impeachment is set forth in OCGA §§ 24-9-81 through 24-9-84. Neither the arrest nor the indictment of a witness is impeaching since until proof of conviction, the witness is protected by the legal presumption of innocence. *Waters v. State*, 82 Ga. App. 608 (61 SE2d 794). Nor is it proper to question the witness about prior misconduct. Conviction of a crime involving moral turpitude must be proved by certified copy of the conviction. *Weaver v. State*, 145 Ga. App. 194 (5) (243 SE2d 560); *Herrin v. State*, 138 Ga. App. 729 (6) (227 SE2d 498).

We find no reversible error in the refusal of the trial court to permit Arthur Scott to stay in the courtroom and stand for identification purposes by the state's witnesses. "The conduct of the trial of any case is necessarily controlled by the trial judge, who is vested with a wide discretion and in the exercise of which an appellate court should never interfere unless it is made to appear that wrong or oppression has resulted from its abuse." *Nunnally v. State*, 235 Ga. 693, 699 (221 SE2d 547); U. S. cert. den. 425 U. S. 959. There was no refusal of the trial court to permit the defendant to confront his accusers, or to cross-examine the witnesses against him. The witness the defendant sought to use to establish that there may have been a case of mistaken identity was identified by most of the McDonald's employees as the person accompanying Hood, and they testified he was not involved in the fight, nor did he do the shooting, but his participation was limited to holding Hood and attempting to break up the

fight. The trial court's rulings are not subject to the objections made and the errors enumerated. We find no merit in this assignment of error.

2. The defendant contends the trial court denied him the right to prove another person committed the crime of which he was convicted. We do not agree with the principle advanced. It is always proper and relevant for an accused to introduce evidence to show that someone else is guilty of the offense with which he is charged. *Bell v. State*, 227 Ga. 800, 806 (183 SE2d 357). Hood claims he was prevented from presenting his defense to the jury by having the state's witnesses identify Scott, and cites *Chambers v. Mississippi*, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) as authority for giving his version of the facts, even though the state evidentiary rule prohibits such procedure. *Chambers* held that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." 410 U. S. at 294. We find no denial of the right of the defendant to present his defense. The state's witnesses that defendant sought to have view Arthur Scott, testified that another man was with the defendant. However, his participation was limited to holding Hood and attempting to stop the fight. Hood did have the opportunity of examining Scott as to his participation but chose not to open an inquiry on that subject. His examination of Scott was limited to an attempt to show his reputation for violence. We find no violation of *Chambers*.

3. The third enumeration assigns error to the refusal of the trial court to give defendant's requested charge, entitled: "Two Reasonable Interpretations." This charge set forth the principle that if there are two reasonable theories, one of guilt and one of innocence, justice and humanity compel acceptance of the theory of innocence. " 'The requested charge was taken from *Davis v. State*, 13 Ga. App. 142 (1) (78 SE 866) and has been criticized from the date it was written. *Jackson v. State*, 13 Ga. App. 147 (1) (78 SE 867), issued the same date, distinguished the rule of *Davis*, supra, and cases which distinguished it continue to this day. [Cits.] If the requested charge is taken literally, if there is any evidence supporting "two theories" — one of innocence and one of guilt, then the "law compels the acceptance of the theory which is consistent with innocence." Therefore, if the *Davis* case was followed, if the State presented an eyewitness testimony of the defendant's guilt, and a confession from a defendant admitting his guilt . . . all a defendant need do is testify that he is innocent and the jury must acquit, because there is evidence in the record supporting each of the theories. This decision was thoroughly discussed and discredited in *Nolen v. State*, 124 Ga. App. 593, 594 (184 SE2d 674) and

relegated to a role in cases "dependent solely upon circumstantial evidence." [Cits.]'" *Lang v. State*, 171 Ga. App. 368, 370 (320 SE2d 185); accord *Williams v. State*, 168 Ga. App. 369 (308 SE2d 862); *Anderson v. State*, 163 Ga. App. 603 (2) (295 SE2d 564); *Griffis v. State*, 163 Ga. App. 491, 492 (295 SE2d 197). The instant case is not dependent "solely upon circumstantial evidence."

4. It is argued that the trial court erred in refusing to give defendant's requested charges on identification. The trial court gave the standard charge on identification, presumption of innocence, rule of reasonable doubt, burden of proof and credibility of witnesses. " '[I]t is no longer necessary to give the exact language of requests to charge when the same principles are fairly given to the jury in the general charge of the court. [Cit.]'" *Shirley v. State*, 245 Ga. 616, 619 (266 SE2d 218). The charge given fairly and correctly covered the principal issue of identification.

5. The trial court did not err in giving the jury a charge on "flight." There was evidence that the defendant fled from the restaurant after the shooting occurred. Whether such fact amounted to flight, and was indicative of consciousness of guilt, or had an innocent explanation, was for the jury. *Leverett v. State*, 254 Ga. 691, 692 (333 SE2d 609); *Harris v. State*, 234 Ga. 871, 874 (218 SE2d 583).

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED JUNE 17, 1986.

*Morton J. Gold, Jr.,* for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney,* for appellee.