## A99A1388. HERNANDEZ v. THE STATE.
### (520 SE2d 698)

Judge Harold R. Banke.

Herminio Hernandez appeals his convictions of driving while under the influence of alcohol to the extent that it was less safe to drive, driving without a license, and driving without use of a safety belt.

DeKalb County police officer Yarbro was patrolling Buford Highway at approximately 4:00 a.m. on June 8, 1997, when he observed Hernandez operating a car. Hernandez was not wearing a seat belt, the car's headlights were off, and the car was weaving in and out of its lane. After Yarbro initiated a traffic stop, he discovered that Hernandez's native language is Spanish although he speaks "broken" English. Yarbro was able to communicate with Hernandez to an extent, as the officer speaks "broken" Spanish. Hernandez had no driver's license, a strong odor of alcoholic beverage was on his breath, and he otherwise appeared intoxicated. As a result, Yarbro adminis-

tered a series of field sobriety tests which Hernandez performed unsatisfactorily. Yarbro then arrested Hernandez for DUI, read him his implied consent warnings, and asked that he submit to a chemical test of his blood. Hernandez responded negatively by shaking his head from side to side and saying no. With the exception of the implied consent warnings, which were read to Hernandez entirely in English, the officer and Hernandez communicated in a mixture of rudimentary English and Spanish.

After Hernandez testified through an interpreter that he had not understood his implied consent warnings, the State was allowed over defendant's objection and motion for mistrial to impeach Hernandez by questioning him concerning two prior DUI arrests during which chemical tests had been performed on his bodily substances. Hernandez admitted that his implied consent warnings had been read to him during one arrest, and as to the other, he testified that he could not remember. *Held*:

1. In Hernandez's first enumeration of error, he contends that the court's admission of evidence of his prior DUI arrests for impeachment purposes was error.

Evidence that Hernandez had submitted to State-administered chemical tests during two prior DUI arrests established that he had been given his implied consent warnings on these two prior occasions, because such tests may be administered only after the accused has been given the warnings. OCGA § 40-5-67.1 (b); *Long v. State*, 185 Ga. App. 277, 278 (1) (363 SE2d 807) (1987). The trial court was authorized to find that Hernandez opened the door to being questioned on this subject, that the fact that he had submitted to chemical tests after having been given the warnings twice before increased the likelihood that he understood the warnings on this occasion, and that the probative value of the elicited testimony outweighed its prejudicial effect. We find no abuse of discretion.

There is no merit in Hernandez's complaint that certified copies of his DUI convictions should have been admitted. This amounts to a best evidence objection, which was not raised at trial and was therefore waived. *Moret v. State*, 246 Ga. 5, 6 (3) (268 SE2d 635) (1980). Moreover, the State was seeking to impeach Hernandez with evidence concerning the circumstances of his arrest, not his criminal conviction. Therefore, the State was not required to prove the conviction, by introducing a certified copy or otherwise. See *Wadsworth v. State*, 209 Ga. App. 333, 334 (5) (433 SE2d 419) (1993); compare *Hood v. State*, 179 Ga. App. 387, 389 (1) (346 SE2d 867) (1986).

2. In Hernandez's second enumeration, he contends that the trial court erred in its charge to the jury. An understanding of the issues raised requires a brief review of certain aspects of Georgia's implied consent laws.

OCGA § 40-5-55 (a) states that any person, who operates a motor vehicle in this State and is arrested for DUI or involved in a traffic accident resulting in serious injuries or fatalities, is deemed to have given consent, subject to OCGA § 40-6-392, to a chemical test or tests of his bodily substances to determine the presence of alcohol or drugs. OCGA § 40-5-67.1 (b) requires the arresting officer to inform the person who has been arrested that he has a right to independent tests after submitting to State testing, and that his refusal to submit to State testing may be offered into evidence against him at trial. OCGA § 40-5-67.1 thus allows the person to withdraw his implied consent by refusing to submit to testing. But OCGA § 40-5-55 (b) provides that any person who is "dead, unconscious, or otherwise in a condition rendering such person incapable of refusal" to submit to testing shall be deemed not to have withdrawn his implied consent, thereby allowing the test or tests to be administered.

In *State v. Tosar*, 180 Ga. App. 885 (350 SE2d 811) (1986), a non-English-speaking defendant submitted to a State-administered breath test after having been read his implied consent warnings. The trial court granted his motion to suppress the results on the ground that the State failed to meet its burden of informing him of his implied consent rights. We reversed. Although we concluded that a non-English-speaking individual is the same as unconscious, we did not base our decision on OCGA § 40-5-55 (b). Instead, we held that the inability of such an individual to communicate with the investigating officer results in the State-administered test being admissible under OCGA § 40-6-392 (a) (3), which provides that the justifiable failure or inability to obtain an additional test shall not preclude admission of the State-administered test. We also declined the defendant's suggestion that we compel the State to print the implied consent rights in languages other than English. Here, the trial court charged the jury under the authority of *Tosar* that the implied consent warning does not have to be read in Spanish to a Spanish-speaking individual.

Hernandez contends that the court erred in refusing to instruct the jury that a Spanish-speaking individual is the same as unconscious and therefore incapable of withdrawing his consent by refusing to submit to a State-administered test. But the undisputed evidence shows that Hernandez spoke some English, did communicate with the officer, and effectively withdrew his consent. No tests were performed. Therefore a charge concerning an uncommunicative defendant was not adjusted to the evidence.

In view of evidence that he did not understand the warnings, Hernandez claims error in the trial court's charge to the jury that his refusal to submit to testing could be considered as evidence creating an inference that the test would show the presence of alcohol or

drugs. But the court also charged the jury that this inference is rebuttable, and Hernandez was allowed to attempt to rebut it with evidence that he did not understand the warnings. We find no error.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 30, 1999.

*Norman H. Cuadra*, for appellant.

*Gwendolyn R. Keyes, Solicitor, Margaret A. Dunaway, Thomas E. Csider, Assistant Solicitors*, for appellee.