A00A2042. McCAFFERTY v. THE STATE.
(545 SE2d 91)

SMITH, Presiding Judge.

Following a bench trial on stipulated facts, Brandon McCafferty was convicted on charges of driving under the influence of alcohol to the extent that it was less safe for him to be in actual physical control of a vehicle (OCGA § 40-6-391 (a) (1)); failure to stop (OCGA §§ 40-6-72; 40-6-1); and failure to maintain lane (OCGA §§ 40-6-48; 40-6-1). McCafferty appeals, contending the trial court erroneously excluded evidence that he rescinded his refusal to take the State-administered breath test. He also contends that the trial court erred in excluding evidence that would have impeached the testimony of the arresting officer. We find no error with respect to the trial court's rulings concerning McCafferty's refusal to take the breath test. But because we conclude that the trial court erred in excluding relevant evidence

---

[12] *Hamilton v. State*, 255 Ga. 468, 470 (2) (339 SE2d 707) (1986).
[13] *Ortiz v. State*, 222 Ga. App. 432, 434 (4) (474 SE2d 300) (1996).

bearing on other issues in the case, we reverse.

1. We first address McCafferty's contention that the trial court erroneously concluded he did not properly rescind his initial refusal to undergo a State-administered breath test. Before trial, McCafferty filed a motion in limine to exclude, among other things, evidence that he refused to take the breath test. Following a hearing, the trial court denied the motion, concluding that McCafferty's attempted rescission was not timely under the requirements set out in *Dept. of Public Safety v. Seay*, 206 Ga. App. 71 (424 SE2d 301) (1992).

McCafferty was arrested by DeKalb County police officer Ryan Frost and was charged with several traffic violations, including DUI. During a hearing on a motion in limine filed by McCafferty, Frost testified that he read McCafferty's implied consent rights and McCafferty indicated that he did not wish to take the State-administered breath test. Officer Frost stated that he reread the implied consent rights and McCafferty requested to speak with an attorney. Frost told McCafferty that he did not have the right to counsel at the time and transported McCafferty to jail. After McCafferty was booked at the jail, Frost left and returned to his duties. According to Frost, approximately two and one-half hours after he left the jail, while he was involved with another traffic stop, he received a radio call from Officer Brian McGrath, who told him that McCafferty had requested "an additional test at that time," a blood test. Frost testified he told McGrath that McCafferty "had not satisfied the State's requirement at the time, that he needed to satisfy the [S]tate's requirement first, before he proceeds to be taken for an additional test." Officer James Berg, who was on patrol with Frost when he arrested McCafferty, and when he received the radio call from McGrath, testified that McGrath informed Frost that McCafferty had requested a blood test.

McCafferty presented conflicting evidence concerning his jailhouse request for a chemical test. Sergeant James Freeman testified that McCafferty told him he wanted to take a breath test. Freeman also testified that he spoke with McCafferty's mother on the telephone and she similarly requested that McCafferty be given a breath test. Freeman stated that after McCafferty requested this test, Freeman talked with Officer McGrath, who "was bringing in another arrestee in the intake area," and told McGrath that McCafferty had requested a Breathalyzer test. He testified that McGrath radioed Frost and advised him of McCafferty's request to take a breath test and that Frost responded that McCafferty had "already refused the test." McCafferty's mother testified that she talked with him on the telephone and that, during their conversation, she heard him state to an officer at the jail that he wanted to take a Breathalyzer test. McCafferty was not given a chemical test of any sort. He contends that the trial court should not have excluded evidence that he

rescinded his on-the-scene refusal to undergo the breath test.

Relying on *Standish v. Dept. of Revenue &c.*, 235 Kan. 900 (683 P2d 1276) (1984), this court in *Seay*, supra, set out the factors to be considered when deciding whether an accused has effectively rescinded a refusal to submit to a State-administered chemical test. To be effective, consent to take a State-administered test must occur

> (1) within a very short and reasonable time after the prior first refusal; (2) when a test administered upon the subsequent consent would still be accurate; (3) when testing equipment is still readily available; (4) when honoring the request would result in no substantial inconvenience or expense to the police; and (5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest.

(Citation and punctuation omitted.) Id. at 73 (1).

In its order denying McCafferty's motion in limine, the trial court noted the conflicting evidence as to whether McCafferty requested a breath or blood test while at the jail but construed the evidence in McCafferty's favor by presuming that McCafferty attempted to rescind "his refusal to take the requested *breath* test." The court found that this attempted rescission, made after Frost had returned to his other duties, was "too late" and that McCafferty had not been in Frost's custody and under his observation for the entire time since his arrest. Based on these findings, the trial court concluded that McCafferty had not complied with *Standish*, supra, and denied his motion.

Even assuming, as argued by McCafferty, that he rescinded his refusal only an hour and 15 minutes after the initial stop, and only 30 to 45 minutes after Frost left the jail, we cannot say the trial court abused its discretion in denying McCafferty's motion to exclude evidence of his refusal. This is not a case, such as that noted for comparison in *Standish*, supra, in which a defendant refused a test at the scene and then changed his or her mind and requested the test "a few minutes later." 235 Kan. at 903. Instead, like the defendant in *Standish*, McCafferty waited to rescind his refusal until after the arresting officer took him to jail and after the officer had left the jail. The evidence presented to the trial court showed that the rescission was not made within "a very short and reasonable time" and that at the time he attempted to rescind his refusal, McCafferty was no longer in Frost's custody. The trial court therefore did not err in denying the motion to exclude evidence of the refusal.

We note McCafferty's argument that the trial court too narrowly interpreted *Seay* by concluding that his rescission could not be effec-

tive since it was made after Officer Frost left the jail. But *Standish*, on which *Seay* relies, shows that just such an interpretation is intended by the guidelines set out in that case for determining whether a rescission was timely. *Standish* clearly states that an "arresting officer need not sit and wait for the person to change his or her mind, and thus neglect other duties." 235 Kan. at 903.

2. McCafferty contends the trial court erred in refusing to allow him to introduce evidence that would have impeached the testimony of McGrath on the issue of whether he effectively rescinded his refusal to submit to the State-administered test. Just before trial was scheduled to begin, defense counsel indicated that he had witnesses present who would testify concerning McCafferty's demeanor at the jail and who could impeach the State's witnesses who would testify that McCafferty asked for a blood test. The trial court concluded that the issue of whether McCafferty rescinded his refusal had already been litigated and ruled on and that the issue would not be relitigated. The court found that McCafferty's witnesses would simply testify concerning that issue and that he could not present "any evidence whatsoever of what took place at the jail." Based on these rulings, McCafferty agreed to enter a stipulated case, while reserving his objections to the trial court's order allowing evidence of his refusal and to the trial court's refusal to permit him to present evidence concerning anything that occurred at the jail.

We find no error in the trial court's conclusion that McCafferty could not present evidence concerning his attempted rescission of his initial refusal to take the breath test. That issue was fully litigated during the hearing on McCafferty's motion in limine. Conflicting testimony on the issue was presented to the trial court, and the court resolved those conflicts against McCafferty, which it was authorized to do. See generally *Thompson v. State*, 234 Ga. App. 74 (1) (506 SE2d 201) (1998).

3. Although we conclude that McCafferty was not entitled to relitigate the issue of his attempted rescission of his refusal to take the State-administered test, we find merit in his contention that the trial court erred in precluding him from introducing any evidence of his sole defense — impeachment of the State's witness on issues other than those concerning his attempted rescission of his refusal to take the chemical test. In addition to his attempt to impeach Officer Frost on the rescission issue, the record shows that McCafferty sought to introduce evidence at trial concerning the events that occurred at the jail in an effort to illustrate his demeanor at that location. Presumably, this evidence might have impeached the testimony of Officer Frost concerning his opinion as to whether McCafferty was a "less safe" driver under OCGA § 40-6-391 (a) (1). "Generally, a party may show anything which in the slightest degree affects the credit of an

opposing witness." (Citation and punctuation omitted.) *Smith v. State*, 190 Ga. App. 6, 7 (2) (378 SE2d 349) (1989). Testimony by other police officers or by McCafferty's mother concerning his demeanor and actions at the jail might have conflicted with or impeached that of Frost concerning manifestations of intoxication shown by McCafferty. The trial court's broad ruling that McCafferty could present *no* evidence concerning the events that transpired at the jail prevented McCafferty from introducing evidence of this defense.

We note the State's argument that even if the trial court erred, any error was harmless in light of the overwhelming evidence of McCafferty's guilt. Using the report prepared by Officer Frost, the prosecutor stated the facts underlying the charges against McCafferty, and while reserving his objections to the trial court's evidentiary rulings, McCafferty agreed that these facts would support convictions on the charges against him if the jury believed them.

Based on the record before us, we cannot conclude that the trial court's refusal to allow McCafferty to present any evidence whatsoever concerning McCafferty's behavior at the jail was harmless. The stipulated facts were, in large part, based on the observations of Officer Frost, whose credibility would have been in issue. And McCafferty preserved his right to appeal the trial court's ruling on the issue by reserving his right to challenge the ruling that he "would not be allowed to introduce evidence of actions taken and statements made while [he] was at the jail." To affirm on the basis that the evidence was overwhelming would prevent McCafferty from obtaining appellate relief on an issue expressly reserved by him and would defeat "the intent of the parties in preserving [his] right to raise the pretrial issues on appeal." *Richards v. State*, 269 Ga. 483, 485-486 (500 SE2d 581) (1998). We therefore reverse the trial court's ruling insofar as the court too broadly prohibited McCafferty from introducing evidence concerning his behavior at the jail.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 24, 2001 —
RECONSIDERATION DENIED FEBRUARY 9, 2001 — 

*Magarahan, Villines & Honis, Charles T. Magarahan, Maurice Bennett,* for appellant.

*Gwendolyn R. Keyes, Solicitor, Lawrence A. Silverman, Lauren E. Waller, Assistant Solicitors,* for appellee.