## A02A0792. FURCAL-PEGUERO v. THE STATE.
### (566 SE2d 320)

ELLINGTON, Judge.

Following a bench trial on stipulated facts, the State Court of Cobb County convicted Rafael Antonio Furcal-Peguero of driving under the influence, OCGA § 40-6-391 (a) (5). Furcal appeals, contending the trial court erred in denying his motion to suppress the result of a breath test. Finding no error, we affirm.

Before trial, the parties agreed that the arresting officer read Furcal the implied consent notice only in English, despite knowing that Furcal's native language was Spanish and that a telephonic translation service was immediately available. Furcal moved to suppress the result of the State-administered breath test on the basis that the implied consent notice was not conveyed to him as required by law.[1] At trial, Furcal conceded the issue is controlled adversely to him by *State v. Tosar*, 180 Ga. App. 885, 888 (350 SE2d 811) (1986), in which we held that the implied consent notice does not have to be translated into Spanish for a Spanish-speaking person. Furcal argued, however, that *State v. Tosar* should be overruled as unconstitutional or modified to address situations in which translation services are instantly available to the arresting officer. Reserving his challenge to the evidence of his blood alcohol concentration, Furcal stipulated to certain facts, including that he was driving with an unlawful blood alcohol level,[2] and submitted his case to the trial court for decision. The court found Furcal guilty, implicitly denying his motion to suppress under *State v. Tosar*.

Although the trial court and the parties characterized the proceeding below as a bench trial on stipulated facts, we are concerned that in many material respects the court and the parties considered the proceeding a conditional guilty plea, designed to preserve for appeal Furcal's legal challenge to *State v. Tosar*, 180 Ga. App. at 888.[3]

---

[1] OCGA §§ 40-5-55 (a) (consent to chemical test of blood, breath, or urine implied by act of driving a motor vehicle); 40-5-67.1 (b) (script for implied consent notice); 40-6-392 (a) (3) (right to independent test), (a) (4) (requirement that driver be advised of right to an independent test at time of arrest).

[2] When Furcal was arrested on June 10, 2000, a per se DUI violation under OCGA § 40-6-391 (a) (5) was defined as driving while having a blood alcohol concentration of 0.10 grams or more. See Ga. L. 1991, pp. 1886, 1891, 1896, § 6 (legal limit set at 0.10 for offenses after April 24, 1991); Ga. L. 2001, pp. 208, 214, 229, § 1-5 (legal limit reduced to 0.08 for offenses after July 1, 2001). The challenged breath test showed Furcal was driving with a blood alcohol concentration of 0.111 grams.

[3] For example, Furcal's attorney asked his client, "You understand you are entering a plea on one count of DUI? . . . Do you understand there is going to be a plea and from the plea we are going to appeal?" The defense attorney stated that he and the prosecutor worked for months on structuring the agreement. The State agreed to recommend a particular sentence and to enter nolle prosequi as to four other counts. See OCGA § 17-8-3. After hearing the parties' stipulated facts, the trial court asked, "Then I suppose with this stipulation it is

In *Hooten v. State*, 212 Ga. App. 770, 775 (1) (442 SE2d 836) (1994), we overruled *Mims v. State*, 201 Ga. App. 277, 279 (410 SE2d 824) (1991), and disallowed the conditional guilty plea procedure. See *Barber v. State*, 231 Ga. App. 176 (2) (498 SE2d 758) (1998); *Martin v. State*, 214 Ga. App. 388 (448 SE2d 57) (1994). Ordinarily, a defendant waives any error in the denial of his motion to suppress by pleading guilty; therefore, viewing Furcal's conviction as arising from a guilty plea would preclude this Court from reviewing the denial of his motion to suppress. *Thompson v. State*, 240 Ga. App. 539, 540 (2) (524 SE2d 239) (2000).

But Furcal expressly proceeded to trial on stipulated facts under the authority of *Richards v. State*, 269 Ga. 483 (500 SE2d 581) (1998). Under *Richards v. State*, a defendant may stipulate to facts that would be demonstrated at trial (such as the result of a breath test) and may acknowledge that the stipulated facts would support a conviction of the crime charged *on the condition* that he may challenge specified pretrial rulings on appeal (such as the denial of his motion to suppress the result of the breath test). Id. at 485-486. This procedure is particularly appropriate in this case, where the trial court was not required to resolve *any* disputed facts in ruling on the pretrial issues. Cf. id. at 483-484 (trial court was required to resolve disputed facts regarding reading of implied consent notice in denying motion to suppress). Thus, based on *Richards v. State*, we consider Furcal's legal challenge on the merits. We urge trial courts, however, not to blur the important distinctions between accepting a guilty plea and finding a defendant guilty following a bench trial.

Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, we review de novo the trial court's application of the law to undisputed facts. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

In five related enumerations, Furcal contends the trial court erred in allowing the evidence of his blood alcohol level, based on the following circumstances to which the State stipulated: (1) Furcal's native language is Spanish and his command of English is marginal; (2) Furcal carried a valid Georgia driver's license; (3) the State administers the driver's test to non-English-speaking applicants in the native language of the applicant; (4) the arresting officer read the implied consent notice to Furcal only in English; (5) as a Cobb

---

agreed by the parties that the Court should find [Furcal] guilty and sentence him. Is that contemplated between the parties?" The defense attorney responded, "I think [*State v.*] *Tosar* compels you to do so, until it is overturned, doesn't it." After finding Furcal guilty, the trial court said, "[s]ince this is a bench trial on stipulated facts, it is recognized by the Court that the parties are stancing [sic] their case so that the Court of Appeals can have a fresh look at . . . [*State v.*] *Tosar.*" The court then stated that it "accept[ed] [Furcal's] plea as freely[,] voluntarily and understandably entered."

County employee, the arresting officer had telephonic access to translation services; (6) knowing Furcal was a Spanish speaker and knowing that a telephonic translation service was immediately available, the arresting officer failed to have a translator relay the implied consent notice to Furcal in Spanish; (7) Furcal's ability to understand that he could refuse the breath test, that evidence of his refusal could be used against him, and that he had a right to an independent test would have been significantly greater if the implied consent notice had been read to him in Spanish; and (8) Furcal agreed to take a breath test. It is also undisputed that Furcal did not request a translator; nor did he request an independent test.

The General Assembly has declared as a matter of law that persons having an illegal blood alcohol concentration "*constitute[ ] a direct and immediate threat to the welfare and safety of the general public.*" (Emphasis supplied.) OCGA § 40-5-55 (a). "Under the implied consent laws, every driver is deemed to have given his consent to a chemical test for alcohol content, subject only to the duty placed upon an officer to advise the testee that he is entitled to an independent test of his own choosing. Once that duty is fulfilled by the officer, the statutory obligation is satisfied." (Citations and punctuation omitted.) *State v. Webb*, 212 Ga. App. 872, 873 (443 SE2d 630) (1994). See OCGA §§ 40-5-55 (a);[4] 40-5-67.1 (b). OCGA § 40-5-67.1 (b) requires the arresting officer to inform the person who has been arrested of his right to an independent test and to inform him that his refusal to submit to State testing may be offered into evidence against him at trial. "OCGA § 40-5-67.1 thus allows the person to withdraw his implied consent by refusing to submit to testing." *Hernandez v. State*, 238 Ga. App. 796, 798 (2) (520 SE2d 698) (1999). OCGA § 40-5-55 (b) provides that any person who is "dead, unconscious, or otherwise in a condition rendering such person incapable of refusal shall be deemed not to have withdrawn" his implied consent, thereby allowing the test or tests to be administered.

Furcal contends, inter alia, that *State v. Tosar* should be overruled or modified because non-English-speaking drivers are denied equal protection of the law in comparison to hearing impaired drivers. OCGA § 24-9-100 et seq. requires police officers to request the assistance of a translator before interrogating a hearing impaired

---

[4] OCGA § 40-5-55 (a) provides in pertinent part:
[A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for [DUI] or if such person is involved in any traffic accident resulting in serious injuries or fatalities.

arrestee.[5] A written interrogation may proceed if a translator is not available within an hour. OCGA § 24-9-103 (b) (2). This mandatory requirement extends to DUI arrests. See *Allen v. State*, 218 Ga. App. 844, 846-847 (463 SE2d 522) (1995) (admission of result of State-administered test reversed due to officer's failure to request a qualified interpreter for a hearing impaired driver); *State v. Woody*, 215 Ga. App. 448, 450 (449 SE2d 615) (1994) (exclusion of result of State-administered test due to officer's failure to request a qualified interpreter for a hearing impaired driver affirmed).

While Georgia law requires a limited accommodation for this immutable physical disability, "a hearing impaired driver does not have greater rights and privileges than a hearing driver." *State v. Webb*, 212 Ga. App. at 873-874. "[T]he laws requiring the presence of a qualified interpreter do not vitiate [the] implied consent" of a hearing impaired driver arrested for DUI. (Punctuation omitted.) Id. Because removing drunk drivers from our highways and roads is a critical public safety function, and because the level of alcohol or drugs in a person's blood, breath, or urine inevitably changes over time, police officers must be able to initiate the evidence collection process without unreasonable delay. See OCGA §§ 40-5-55 (a); 40-5-67.1; *State v. Tosar*, 180 Ga. App. at 888; *Smith v. State*, 143 Ga. App. 347, 349 (1) (238 SE2d 698) (1977). As we emphasized in *State v. Webb* and in *State v. Tosar*, *all* drivers are entitled only to be *advised* of their rights under the implied consent law, that is, to have the implied consent notice read to them. *State v. Webb*, 212 Ga. App. at 873-874; *State v. Tosar*, 180 Ga. App. at 888. See *Snelling v. State*, 176 Ga. App. 192, 193 (1) (335 SE2d 475) (1985) (officer's testimony that he advised the driver of his implied consent rights is prima facie

---

[5] In particular, OCGA § 24-9-103 provides:
(a) The arresting law enforcement agency shall provide a qualified interpreter to any hearing impaired person whenever the hearing impaired person is taken into custody for allegedly violating any criminal law or ordinance of the state or any political subdivision thereof. (b) (1) Except as provided in paragraph (2) of this subsection, the law enforcement agency shall immediately request a qualified interpreter from the department, and the department shall provide a qualified interpreter. No interrogation, warning, informing of rights, taking of statements, or other investigatory procedures shall be undertaken until a qualified interpreter has been provided; and no answer, statement, admission, or other evidence acquired from the hearing impaired person shall be admissible in any criminal or quasi-criminal proceeding unless such was knowingly and voluntarily given through and in the presence of a qualified interpreter. No hearing impaired person who has been taken into custody and who is otherwise eligible for release shall be detained because of the unavailability of a qualified interpreter. (2) If a qualified interpreter is not available one hour after the hearing impaired person has been taken into custody and a request has been forwarded to the department, the arresting officer may interrogate or take a statement from such person, provided that such interrogation and answers thereto shall be in writing and shall be preserved and turned over to the court in the event such person is tried for the alleged offense.

evidence of compliance). The law does not require the arresting officer to ensure that the driver *understands* the implied consent notice.[6] *State v. Webb*, 212 Ga. App. at 873-874; *State v. Tosar*, 180 Ga. App. at 888.

The result of the State-administered test is admissible in this case because Furcal consented to chemical intoxication tests by driving on Georgia's roads, because the officer properly advised Furcal of his implied consent rights, and because Furcal did not withdraw his consent. OCGA §§ 40-5-55 (a); 40-5-67.1; 40-6-392; *Snelling v. State*, 176 Ga. App. at 193 (1). See also *State v. Webb*, 212 Ga. App. at 873; *State v. Tosar*, 180 Ga. App. at 888.[7] The trial court did not err in admitting the result of the State-administered breath test.

---

[6] Furcal contends the trial court erred in finding that he "knowingly waived his right to additional testing" under OCGA § 40-6-392. The trial court, however, did *not* find that Furcal knowingly waived his right to additional testing. Further, the admissibility of a State-administered test is not conditioned on the State's showing of a knowing and intelligent waiver of the "right" to an independent test. *Cunningham v. State*, 255 Ga. 35, 38 (6) (334 SE2d 656) (1985); *State v. Webb*, 212 Ga. App. at 873, 874-875; *State v. Tosar*, 180 Ga. App. at 887; *Snelling v. State*, 176 Ga. App. at 193-194 (1).

[7] We note that in *State v. Tosar*, we accepted the State's argument that a non-English-speaking driver is "noncommunicative," that is, "the same as unconscious," but we declined to base our holding that the State-administered test was admissible on OCGA § 40-5-55 (b). 180 Ga. App. at 887. We reaffirm today (and agree with Furcal) that a non-English-speaking driver is *not* "in a condition rendering such person incapable of refusal" for the purposes of OCGA § 40-5-55 (b). See also *State v. Webb*, 212 Ga. App. at 874 (hearing impaired driver's inability to understand the officer did not constitute a withdrawal of his implied consent). This is an important distinction because, under OCGA § 40-5-55 (b), a law enforcement officer is not required to advise a dead or unconscious driver, or a similarly noncommunicative driver, of his rights under the implied consent law before administering chemical tests. *Smith v. State*, 143 Ga. App. at 349 (1) (semi-conscious and noncommunicative). To the greatest extent possible, every driver suspected of DUI should be given the opportunity to exercise the choice of withdrawing his consent to testing (and suffering the evidentiary consequences) or submitting to the test and requesting an independent test. Requiring law enforcement officers to read the implied consent notice in English to every conscious driver, even those seemingly incapable of understanding spoken English, may seem like a hollow formality, but it is not. Suppose an officer believes an apparently non-English-speaking driver would not be able to understand the implied consent notice and so forgoes giving the notice. The driver might later claim he could have understood the notice and, if given the notice, he would have withdrawn his consent or requested an independent test. Requiring law enforcement officers to read the implied consent notice in English to every conscious driver relieves those officers of the unreasonable burden of evaluating a driver's communication ability before testing his breath or blood.

We wish to clarify one aspect of *State v. Tosar*. In *State v. Tosar*, we stated that the driver's "inability to communicate with the officer brings this case within the meaning of OCGA § 40-6-392 (a) (3). . . . Where the law enforcement officer cannot communicate with the suspect because the suspect cannot speak English, any failure to obtain an additional test is justifiable and the results of the state-administered tests are admissible." 180 Ga. App. at 888. As we noted in *Nelson v. State*, 135 Ga. App. 212, 213 (217 SE2d 450) (1975), however, "the state's justifiable failure or inability to obtain the additional test must logically be preceded by the [driver's] request for same." (Punctuation omitted.) See also *Smith v. State*, 250 Ga. App. 583, 586 (1) (552 SE2d 528) (2001); *State v. Vandervoort*, 215 Ga. App. 72, 73 (1) (449 SE2d 617) (1994); *State v. Buffington*, 189 Ga. App. 800, 801-802 (377 SE2d

*Judgment affirmed. Smith, P. J., and Eldridge, J., concur.*

DECIDED MAY 21, 2002 —
RECONSIDERATION DENIED JUNE 12, 2002 — 

*Head, Thomas, Webb & Willis, William C. Head,* for appellant.
*Barry E. Morgan, Solicitor-General, Lawrence J. LoRusso, Todd H. Ashley, Assistant Solicitors-General,* for appellee.

---

548) (1989). Because Furcal did not request an independent test, OCGA § 40-6-392 (a) (3) has no application to the analysis of whether the result of the State-administered test is admissible.