A04A1671. THE STATE v. SIMMONS.
(605 SE2d 846)

ELDRIDGE, Judge.
In this case, the State of Georgia appeals from the grant of defendant David Simmons's motion to suppress blood alcohol test results in the State Court of Fulton County. The State contends that the trial court erred in granting Simmons's motion. The trial court found that a defendant under arrest for driving under the influence

("DUI"), as here, may withdraw his or her consent to a State-administered blood test at any time before the blood sample has been analyzed, in this case 11 days thereafter. We disagree and reverse.

In reviewing a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment of the trial court. Where the evidence is uncontroverted and there is no question concerning the credibility of witnesses, we conduct a de novo review of the trial court's application of law to the undisputed facts. *State v. Stearns*, 240 Ga. App. 806, 807 (524 SE2d 554) (1999); *Joiner v. State*, 239 Ga. App. 843, 848 (2) (522 SE2d 25) (1999). "This Court must construe the evidence most favorably to upholding the trial court's judgment in this regard. [Cits.]" *State v. Burke*, 230 Ga. App. 392, 393 (496 SE2d 755) (1998).

The question of whether one should be permitted to withdraw his or her consent to State-administered chemical testing after being arrested for DUI appears to be one of first impression. While we are mindful that our implied consent law allows a reasonable opportunity to rescind a refusal of a State-administered chemical test,[1] see generally *McCafferty v. State*, 248 Ga. App. 13 (545 SE2d 91) (2001); *Dept. of Public Safety v. Seay*, 206 Ga. App. 71, 73 (1) (424 SE2d 301) (1992), we find no basis in such law to permit the withdrawal of consent to State testing once consent has been given and is an accomplished fact.

> In construing a statute, the determining factor is the intent of the legislature and we look first to the words of the statute to determine what that intent was and if those words be plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further in determining what that intent was.

(Citation and punctuation omitted.) *Early v. Early*, 269 Ga. 415, 416 (499 SE2d 329) (1998). Moreover, "where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden." (Citation omitted.) *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81) (1970). "In all interpretations of statutes,

---

[1] Whether an accused has effectively rescinded a refusal to submit to a State-administered chemical test is determined upon a consideration of five factors, i.e., whether such a refusal is rescinded

(1) within a very short and reasonable time after the prior first refusal; (2) when a test administered upon the subsequent consent would still be accurate; (3) when testing equipment is still readily available; (4) when honoring the request would result in no substantial inconvenience or expense to the police; and (5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest.

(Citations omitted.) *McCafferty v. State*, 248 Ga. App. 13, 15 (1) (545 SE2d 91) (2001).

the ordinary signification shall be applied to all words. . . ." OCGA § 1-3-1 (b). There is no reason to depart from these rules in this case.

"The General Assembly has declared as a matter of law that persons having an illegal blood alcohol concentration '*constitute a direct and immediate threat to the welfare and safety of the general public.*' OCGA § 40-5-55 (a)." (Punctuation omitted; emphasis in original.) *Furcal-Peguero v. State*, 255 Ga. App. 729, 731 (566 SE2d 320) (2002). Under the implied consent laws, drivers arrested for DUI are deemed to have consented to chemical testing of their bodily fluids, subject only to the requirement that arresting officers notify them of the right to an independent chemical test by a person of their own choosing and that the refusal to submit to State testing is admissible in evidence against them. Id.; *State v. Webb*, 212 Ga. App. 872, 873 (443 SE2d 630) (1994); see OCGA §§ 40-5-55 (a);[2] 40-5-67.1. " 'OCGA § 40-5-67.1 . . . allows the person to withdraw his implied consent by refusing to submit to testing.' *Hernandez v. State*, 238 Ga. App. 796, 798 (2) (520 SE2d 698) (1999)." *Furcal-Peguero v. State*, supra. Consequently, Georgia's implied consent law, on its face, presents two choices to those arrested for DUI: (1) submit to State-administered chemical testing with right to independent testing, if desired, or (2) refuse State testing, suffering the attendant evidentiary consequences. Id. at 733, n. 7. While in proper circumstances one may rescind a refusal to submit to State testing, *McCafferty v. State*, supra; *Dept. of Public Safety v. Seay*, supra, this is wholly consistent with our implied consent law in that it amounts to no more than submission to State testing as required thereunder. OCGA §§ 40-5-55 (a); 40-5-67.1; see *Furcal-Peguero v. State*, supra (rescinding refusal to submit to State testing impliedly consents thereto). However, no fair analogy may be drawn between rescinding refusal of State testing and withdrawing consent to State testing once consent has been given, the latter as contrary to public safety policy mandating that drivers arrested for DUI submit to State-administered chemical testing, subject to the provisions of OCGA § 40-6-392, to determine the presence of alcohol or drugs in their persons. OCGA §§ 40-5-55 (a); 40-5-67.1; 40-6-391; compare *Garcia v. State*, 207 Ga.

---

[2] Pertinently OCGA § 40-5-55 (a) provides:

[A]ny person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for [DUI].

We omit the final clause of the foregoing excerpt from OCGA § 40-5-55 (a), specifically, "or if such person is involved in any traffic accident resulting in serious injuries or fatalities[,]" as unconstitutional notwithstanding any determination of probable cause. *Ferguson v. State*, 277 Ga. 530 (590 SE2d 728) (2003); *Cooper v. State*, 277 Ga. 282, 291 (587 SE2d 605) (2003).

App. 653, 656 (1) (d) (428 SE2d 666) (1993) (in the general criminal law voluntary consent legally obtained continues until revoked or withdrawn absent probable cause to arrest). That the state court granted Simmons's motion to suppress upon finding him entitled to withdraw his duly given consent to State-administered testing on the theory that chemical analysis of his blood sample had not yet begun, is thus contrary to our implied consent law and reversible error.

*Judgment reversed. Adams, J., concurs. Ruffin, P. J., concurs specially.*

RUFFIN, Presiding Judge, concurring specially.

Although I agree that the trial court erred in suppressing the results of Simmons' blood test, I write separately to clarify the basis for my agreement. It is undisputed that, when arrested for driving under the influence of alcohol on August 4, 2001, Simmons consented to a State-administered blood test. A police officer transported Simmons to the hospital, where his blood was drawn, and the blood was submitted to the crime lab for analysis. Several days later, and before the crime lab actually analyzed the blood, defense counsel wrote the crime lab, purportedly withdrawing Simmons' consent to the blood test. The lab subsequently analyzed the blood, which, according to the lab report, contained 0.174 grams of alcohol.

Following a hearing, the trial court suppressed the results of the blood test. In so doing, it determined that Simmons had validly withdrawn his consent to the test before the State analyzed his blood. Under Georgia's implied consent law,

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent . . . to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of [OCGA § 40-6-391, which prohibits driving under the influence of alcohol, drugs, or other intoxicating substances].[3]

A person suspected of driving under the influence can, however, withdraw this implied consent.[4] Although our Supreme Court "has made plain that the Georgia Constitution does not protect citizens

---

[3] OCGA § 40-5-55 (a).

[4] See *Allen v. State*, 254 Ga. 433, 434 (1) (a) (330 SE2d 588) (1985); *Hernandez v. State*, 238 Ga. App. 796, 798 (520 SE2d 698) (1999) ("OCGA § 40-5-67.1 . . . allows the person to withdraw his implied consent by refusing to submit to testing.").

[arrested for DUI] from compelled blood or breath testing,"[5] the implied consent provision "grants a suspect an opportunity, not afforded him by our constitution, to refuse to take a blood-alcohol test."[6] The question here is when that refusal or withdrawal must be made.

Simmons argues, and the trial court agreed, that in cases involving State-administered blood tests, the refusal can occur at any time before the crime lab analyzes the blood sample. Like the majority, I disagree.

As we recently noted, " 'under ordinary circumstances, [an] implied consent warning must be given [to DUI suspects] at the time of the arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant.' "[7] This statutorily mandated warning informs the suspect of his or her right to refuse State-administered testing, as well as the ramifications of such refusal.[8] At the conclusion of the warning, the officer must ask whether the suspect will submit to the State test.[9] If the person refuses, the officer must report the refusal to the Department of Motor Vehicle Safety.[10] Moreover, a chemical test shall not be administered if the person "refuses, upon the request of a law enforcement officer, to submit to [the] test."[11]

Given this statutory scheme, it is apparent that the legislature intended that a refusal to submit to chemical testing — or a withdrawal of implied consent — be communicated in close proximity to the time of arrest and the officer's request for testing. Certainly, a DUI suspect must make such refusal known before he or she actually submits to the test and the testing process begins.

According to Simmons, "testing" had not begun here because the crime lab had not yet analyzed his blood sample. In my opinion, however, a blood test begins with the withdrawal or collection of blood. And the language of OCGA § 40-6-392, which sets forth guidelines governing State-administered chemical testing, supports this interpretation. Subsection (a) of that Code section states that, "[w]here such a chemical test is made, the following provisions shall apply." It then lists several provisions relating, among other things, to the actual chemical analysis performed pursuant to methods approved

---

[5] *Cooper v. State*, 277 Ga. 282, 290 (587 SE2d 605) (2003).

[6] (Punctuation and emphasis omitted.) Id. See also *Allen*, supra.

[7] *Kahl v. State*, 268 Ga. App. 879, 881 (602 SE2d 888) (2004).

[8] See OCGA § 40-5-67.1 (b).

[9] See id.

[10] See OCGA § 40-5-67.1 (d); see also OCGA § 40-5-1 (7) (defining "department").

[11] OCGA § 40-5-67.1 (d).

by the Division of Forensic Sciences,[12] as well as the type of persons who may withdraw blood "for the purpose of determining the alcoholic content therein."[13] Provisions relating to both the *collection* and *analysis* of blood thus fall within the discussion of "chemical test" under OCGA § 40-6-392 (a). Clearly, therefore, the legislature viewed the blood withdrawal as part of the testing process.

Simmons submitted to the State-administered blood test when he allowed his blood to be drawn on August 4, 2001, following his arrest. He did not refuse to take the test or withdraw his implied consent at that point. Instead, he waited several days before attempting to withdraw consent. Given the language of Georgia's implied consent provision, I find this attempted withdrawal untimely and, thus, ineffectual. Accordingly, the trial court erred in granting Simmons' motion to suppress.

DECIDED OCTOBER 19, 2004 —
RECONSIDERATION DENIED NOVEMBER 2, 2004.

*Carmen D. Smith, Solicitor-General, Jodi L. Harter, Jody L. Peskin, Assistant Solicitors-General*, for appellant.
*Mark A. Hansford, Michael M. Hawkins*, for appellee.