A07A0232. THE STATE v. STEWART.
(649 SE2d 525)

MILLER, Judge.
Prior to his trial on a DUI charge, Matthew Alan Stewart moved to suppress evidence relating to the breathalyzer test administered to

[4] See generally *Woods v. Gatch*, 272 Ga. App. 642 (613 SE2d 187) (2005).
[5] See Uniform Superior Court Rules 25.1–25.3.

him, based upon his alleged failure to understand the implied consent warnings given by police. The trial court granted that motion, and the State filed this appeal pursuant to OCGA § 5-7-1 (a) (4). Finding that the trial court failed to apply the relevant law, we reverse.

In reviewing a trial court's decision on a motion to suppress where, as here, "the evidence was uncontroverted and no question regarding the credibility of witnesses was presented, an appellate court must conduct a de novo review of the trial court's application of law to the undisputed facts." (Punctuation and footnote omitted.) *State v. Brown*, 278 Ga. App. 457, 459 (629 SE2d 123) (2006).

The record shows that on June 9, 2002, Stewart was stopped for speeding after he passed a marked Fulton County Police Department patrol car while traveling at a high rate of speed. After giving Stewart field sobriety tests, Detective Danny Doyle placed him under arrest for DUI. Doyle told Stewart several times that he was being arrested for DUI and each time Stewart replied that he "did not understand," at one point asking the officer to "explain it in English." Doyle placed Stewart in the patrol car and read him the implied consent notice, as required by OCGA § 40-5-67.1 (b). When Stewart again responded that he "did not understand," Doyle read him the implied consent notice several more times. Each time Stewart responded that he "did not understand."

Doyle then transported Stewart to the Fulton County jail, where he attempted to give Stewart a breathalyzer test. Doyle explained to Stewart what the breathalyzer machine was and how it operated and then asked him, "Are you going to take it? Step up and blow if you are." Stewart went to the machine without objection and put his mouth over the mouthpiece, but plugged the hole with his tongue and declined to blow a breath sample into the tube. Eventually the machine "timed out" and gave a reading of an "insufficient sample" to determine Stewart's blood alcohol level. Doyle treated Stewart's conduct as a refusal to take the test and made no further attempts to obtain a breath sample from Stewart.

The State planned to introduce at trial evidence of Stewart's refusal to provide a breath sample as circumstantial evidence of his guilt. Stewart moved to suppress this evidence, arguing that his failure to understand the implied consent warnings invalidated any consent he gave to take the breathalyzer test.[1] The trial court agreed, and granted Stewart's motion, finding that he did not knowingly and voluntarily consent to the breathalyzer test.

---

[1] Stewart declined to file an appellate brief, even after being granted an extension of time in which to do so, and his arguments referenced herein are those found in the transcript of the hearing on the motion to suppress.

Neither Stewart's arguments nor the order of the trial court address the legal issues actually presented by Stewart's motion to suppress, which were: (1) whether Stewart's conduct can be construed as a refusal to take the breathalyzer test; and, if so (2) whether Stewart's professed inability to understand the implied consent warnings warrants excluding the evidence of that refusal. We now turn to those issues.

1. As the term "implied consent" indicates, "every driver's consent to a chemical test for intoxication is implied by law." *State v. Webb*, 212 Ga. App. 872, 873 (443 SE2d 630) (1994). Specifically, everyone who operates a motor vehicle in Georgia implicitly consents to the chemical testing of their bodily fluids in the event they are arrested for DUI, but they may revoke that consent by refusing to submit to such testing. See OCGA § 40-5-55 (a); *State v. Simmons*, 270 Ga. App. 301, 303 (605 SE2d 846) (2004). A driver's refusal to take a chemical sobriety test, however, allows the State to introduce that fact at trial, as circumstantial evidence of guilt. OCGA § 40-5-67.1 (b). Thus, the initial question before us is whether Stewart's conduct with respect to the breathalyzer test can be viewed as a refusal to take that test. Relevant case law demonstrates that Stewart's actions can be so construed.

"[U]nless a person is encumbered by a physical or medical limitation, he or she may be considered to have refused to submit to the test if an adequate breath sample has not been provided." (Footnote omitted.) *Chamberlain v. State*, 246 Ga. App. 423, 425 (541 SE2d 64) (2000). See also *Allen v. State*, 229 Ga. App. 435, 436-438 (1) (494 SE2d 229) (1997) (Where defendant repeatedly failed to provide a breath sample sufficient to allow the machine to analyze his blood alcohol level, his actions constituted a refusal to submit to the state-administered test and were admissible.); *Fruhling v. State*, 233 Ga. App. 544 (2) (505 SE2d 47) (1998) (Defendant's conduct constituted a refusal to submit to a breathalyzer test where, having verbally agreed to take the test, he repeatedly refused to blow into the machine hard enough to produce a valid sample.).

The record contains no evidence that Stewart suffered from a physical or medical condition that would prevent him from providing an adequate breath sample. We must therefore conclude that his conduct constitutes a refusal to provide such a sample.

2. In light of the foregoing, the second question before us is whether any grounds exist for suppressing the otherwise admissible evidence of Stewart's refusal to submit to chemical testing. Stewart argues that his failure to understand the implied consent notice read to him warrants such suppression. We disagree.

Stewart asserts that his professed inability to comprehend Georgia's statutorily-mandated implied consent notice meant that he

could not understand his rights or the consequences of his actions. Thus, he argues, neither his consent to nor his refusal to submit to chemical testing are valid, and his conduct with respect to the breathalyzer test was neither knowing nor voluntary. Whether Stewart understood the implied consent notice, and therefore comprehended the import of his actions, however, is irrelevant.

The law views the implied consent to chemical testing, or the revocation of that consent, as valid so long as the arresting officer reads the driver the implied consent notice set forth in OCGA § 40-5-67.1 (b). See, e.g., *Leiske v. State*, 255 Ga. App. 615, 617 (2) (565 SE2d 925) (2002) ("The determinative issue with the implied consent notice is whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing.") (citation and punctuation omitted); *Furcal-Peguero v. State*, 255 Ga. App. 729, 732-733 (566 SE2d 320) (2002) (consent valid so long as implied consent notice read to driver); *State v. Brookbank*, 283 Ga. App. 814, 816 (642 SE2d 885) (2007) (refusal valid where implied consent notice given).

Notably, however, "drivers are entitled only to be *advised* of their rights under the implied consent law, that is, to have the implied consent notice read to them. The law does not require the arresting officer to ensure that the driver *understands* the implied consent notice." (Citations and footnote omitted; emphasis in original.) *Furcal-Peguero*, supra, 255 Ga. App. at 732-733. See also *Webb*, supra, 212 Ga. App. at 873 ("In all cases the court is required to find only that the implied consent law was *conveyed* to the . . . driver. The State is under no duty to prove [that] the . . . driver fully understood his rights under [that] law.") (citation omitted; emphasis in original); *Rodriguez v. State*, 275 Ga. 283, 285-286 (2) (565 SE2d 458) (2002) (no requirement that the implied consent notice be read in any language other than English, even where the driver speaks no English). The rationale underlying this rule is obvious: to hold otherwise, and allow an intoxicated driver's professed inability to understand the implied consent warning to vitiate either the implied consent or the revocation of it, would so undermine OCGA § 40-5-55 (a) as to render it meaningless. Indeed, such a holding would actually benefit most those drivers who pose the greatest threat on the road — i.e., those who are so impaired that, even though conscious, are unable to comprehend their circumstances.

Because Detective Doyle read Stewart the implied consent notice in an accurate and timely fashion, that notice was valid irrespective of Stewart's claimed inability to understand it. As a result, even if Stewart's subsequent refusal to provide a breath sample resulted from a failure to comprehend the consequences of his conduct, it is

nevertheless admissible against him. We therefore reverse the order of the trial court granting Stewart's motion to suppress.

*Judgment reversed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED JUNE 20, 2007 —
RECONSIDERATION DENIED JULY 12, 2007 —

*Carmen D. Smith, Solicitor-General, Oliver E. Murray, R. Leon Benham, Assistant Solicitors-General,* for appellant.

*Monte K. Davis,* for appellee.